**In re Heriberto MEDRANO, Petitioner–Appellant.**

**No. 91–8276**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 16, 1992.

Nancy M. Simonson, J.A. Canales, Canales & Simonson, Corpus Christi, Tex., for petitioner-appellant.

Before POLITZ, Chief Judge, KING, and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

Heriberto Medrano, an attorney at law, appeals an order disbarring him from practice in the federal district court for the Western District of Texas. Finding that the district court applied the wrong evidentiary standard we reverse.

### Background

Robert Greig retained Medrano as his counsel in a criminal trial in the Western District of Texas.[1] Ernesto Vasquez, a codefendant, retained attorney Gary Cohen. Prior to the trial, Cohen complained to the trial judge that Medrano had twice

---

1. *United States v. Hanley, Greig, and Vasquez,* No. A–90–CR–160 (W.D.Tex.1991).

met with Vasquez without his knowledge or permission. Cohen charged that Medrano had attempted to induce Vasquez to abandon a plea agreement which called for Vasquez to plead guilty and to testify against Greig.

Prior to jury selection the district court informed Medrano that in his absence "the Court heard evidence today that on two different occasions you personally visited with Mr. Vasquez, advised him that he should not plead guilty, that he had a defense, and that his lawyer was not doing for him what another lawyer should do or be able to, that he should get another lawyer." The district court then set a hearing on Medrano's disbarment to commence immediately after the jury retired to deliberate in the Greig and Vasquez trial.

Vasquez, Greig, Cohen, and Medrano testified at the disbarment proceeding. The court took the matter under advisement and subsequently issued an order disbarring Medrano but stayed its order pending appeal. Medrano timely appealed.

### Analysis

■ A disbarment proceeding is adversarial and quasi-criminal in nature and the moving party bears the burden of proving all elements of a violation. *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Matter of Thalheim*, 853 F.2d 383 (5th Cir.1988). The notice of the allegations and the disbarment proceeding must satisfy the requirements of procedural due process.[2] *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696 (5th Cir.1990). A federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction. *NASCO*, supra.

■ The "clear and convincing" evidentiary standard is applied far more often

than it is defined. The Supreme Court defined it in a different setting as that weight of proof which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case. *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, —— U.S. ——, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990) (internal punctuation and citations omitted). We are persuaded that the Cruzan definition is appropriate in a proceeding for disbarment of an attorney from practice before a federal court.

■ The district court expressly stated that its findings of fact were based on a preponderance of the evidence. When a district court bases its findings of fact upon an erroneous legal standard the appellate court is not bound by the Fed. R.Civ.P. 52(a) clearly erroneous rubric. Cf. *Matter of Thalheim*, 853 F.2d 383 (5th Cir.1988). In such cases we review the record *de novo*. *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984).

The local rules implicated in this proceeding provide in relevant part:

Rule AT–4. STANDARDS OF PROFESSIONAL CONDUCT[3]

Every member of the bar of this Court ... shall familiarize oneself and comply with the standards of professional conduct required by members of the State Bar of Texas and contained in the Texas Disciplinary Rules of Professional Conduct, V.T.C.A. Government Code, Title 2, Subtitle G–Appendix.... No attorney permitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the

---

**2.** We maintain significant reservations about the procedures followed, including the manner in which evidence was submitted. The district court should conduct such hearings in the traditional adversarial mode. It is preferable that the court formally adopt a disciplinary Rule.

*See, e.g.,* Uniform Local Rules of the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana, Rule 20.10E.

**3.** United States District Court for the Western District of Texas, Local Rule AT–4 (West 1991).

Court or in any manner interferes with the administration of justice therein.

Rule AT–2. SUSPENSION OR DISBARMENT[4]

\* \* \* \* \* \*

(b) The Court may, after reasonable notice and an opportunity to show cause to the contrary, and after a hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the Bar or for failure to comply with these rules or any rule of the Court.

Local court rules have the force of law and are subject to review under an appellate court's supervisory powers. Fed. R.Civ.P. 83; *Frazier v. Heebe*, 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). Medrano has not challenged the validity of the local rules although he raises a procedural due process question concerning their application.[5]

The implicated Texas ethical rule in relevant part is:

Rule 4.02. Communication with One Represented by Counsel[6]

(a) In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person ... the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.[7]

\* \* \* \* \* \*

(d) When a person, ... that is represented by a lawyer in a matter seeks advice regarding that matter from another lawyer, the second lawyer is not prohibited by paragraph (a) from giving such advice without notifying or seeking consent of the first lawyer.[8]

■ Rule 4.02(d) permits an otherwise prohibited communication if it is initiated by the client. Comment 2 to Rule 4.02 notes that Rule 4.02(a) does not: (1) prohibit communication between one lawyer's client and persons represented by another lawyer without permission of the second lawyer as long as the first lawyer does not cause or encourage the communication, (2) impose an affirmative duty upon an attorney to discourage communications between the lawyer's client and other represented persons, nor (3) prohibit a lawyer from furnishing a second opinion in a matter to a represented person who requests an opinion.

The testimony establishes the facial elements of a violation of Rule 4.02(a). It does not establish, however, the identity of the person who initiated the communications, nor does it negate the applicability of Rule 4.02(d). The disbarment order is predicated upon a violation of Rule 4.02. All elements of a violation of Rule 4.02, including proof that the lawyer initiated the prohibited communication, must be established by clear and convincing evidence. Absent proof of this weight and quality, there can be no disbarment based upon a violation of Rule 4.02. *In re Ruffalo, supra.* Thus, the dispositive issue herein is whether Medrano or someone else initiated the verboten communication.

Vasquez testified on direct examination as follows:

(1) He and Greig were friends at the time of their arrests and had continuous, periodic conversations prior to the two incidents in question.

(2) In their prior conversations they discussed their respective cases, compared the "deals" being offered, and discussed their impressions of what the other's attorney thought about their respective cases.

---

4. United States District Court for the Western District of Texas, Local Rule AT–2(b) (West 1991).

5. *See* fn. 2 *supra.*

6. V.T.C.A. Tex. Gov't Code Ann. Title 2, subtitle G–App., Rule 4.02 (West Supp.1991).

7. This paragraph is substantially identical to the ABA Model Rule of Professional Conduct, Rule 4.2.

8. Paragraph (d) is a non-uniform amendment to the ABA Model Rules of Professional Conduct, Rule 4.2.

(3) He was present at a meeting between Greig and Medrano at the Texas French Bread Cafe when Medrano informed him that he could answer any question which he, Vasquez, might have about his case but that he, Medrano, could not ask Vasquez any questions.

(4) Although originally stating that Medrano and Greig invited him to that meeting, Vasquez later stated that it was Greig who invited him.

(5) He asked Medrano about an entrapment defense.

(6) Medrano informed him that he was employing that defense in Greig's case but did not know if it could be used in Vasquez's case.

(7) Medrano encouraged Vasquez to talk to his lawyer about this defense.

(8) After a second meeting a week or so later Vasquez asked Medrano to recommend another attorney; Medrano recommended Ray Cantu.

(9) Medrano never denigrated Cohen's performance or told Vasquez to get rid of Cohen.

(10) Medrano told him that he could not represent him in this matter because of a conflict of interest.

(11) Medrano always encouraged Vasquez to consult with Cohen about his possible defenses and to ask Cohen all of the questions he was asking Medrano.

Prior to cross-examining Vasquez Cohen inquired about the propriety of his questioning a witness in this proceeding, noting that the proceeding "was not an adversarial one."[9] The district court dismissed the point stating that it considered Cohen "just to be the messenger.... If there's information that you think the Court should be aware of, I'd appreciate knowing it." On cross-examination Vasquez testified as follows:

(1) After the first meeting with Medrano, Vasquez contacted Cohen to deliver the tapes received from Medrano.

(2) Vasquez told Cohen that he had been requested to meet with Greig and Medrano.

(3) After the second meeting Vasquez called Cohen to tell him that Greig and Medrano did not want him to testify or to "cop a plea."

(4) After a pretrial hearing Greig approached Vasquez and told him not to enter the plea agreement or to testify.

(5) Cohen told Vasquez not to contact Greig after that incident.

(6) Vasquez called Cohen on the Friday prior to trial to say that he had changed his mind; he wanted to repudiate the plea agreement and "fight it."

(7) Vasquez's change of heart resulted from a second meeting with Medrano and Greig, conducted at his place of employment, in which one of them suggested that Vasquez get a second opinion about his situation.

(8) Medrano had shown him certain things that convinced Vasquez there was a valid entrapment defense. Medrano told him that he should not persist in the plea agreement and should not testify.

(9) He did not call Greig or Medrano requesting a meeting with them.

(10) Prior to the second meeting Greig called to say that he and Medrano were coming over to talk with Vasquez.

(11) At that time Vasquez was uncertain as to whether the plea agreement was the right thing to do. His uncertainty was created by the conflicting opinions of Medrano and Greg and Cohen.

(12) He changed his mind as to the plea as a direct result of the second meeting.

(13) Medrano or possibly Greig made some type of comment to the effect that Cohen was not doing his job.

(14) Medrano suggested that Vasquez would be better off if he fired Cohen and hired another attorney.

**9.** See fn. 2 *supra*.

On redirect by Medrano, Vasquez testified that: (1) He was uncertain whether Medrano or Greig urged him to get a second opinion or to fire Cohen; (2) he reiterated that Medrano always urged him to discuss his case with Cohen; (3) Medrano was not present at the conversation Vasquez had with Greig following the pretrial conference; and (4) Medrano never called Vasquez although Vasquez had called him once.

Greig testified on direct examination as follows:

(1) Vasquez met Medrano and asked counsel to defend him after Greig had already retained him. Medrano declined due to the conflict.

(2) To his knowledge Medrano made no efforts to contact Vasquez.

(3) Vasquez was always uncertain of the progress of the cases.

(4) After the court ordered Medrano and Greig not to contact any other defendant in the case, Vasquez continued to contact Greig. Medrano advised Greig not to communicate with Vasquez.

(5) Medrano never told Vasquez to fire his lawyer.

(6) Greig told Vasquez on more than one occasion that Cohen was not doing a good job.

(7) After finding out about the plea agreement Medrano advised Greig not to have any contact with Vasquez.

(8) Medrano never advised Greig to call Vasquez.

(9) Medrano asked Vasquez at the second meeting whether Vasquez was going to plead guilty.

(10) Greig and not Medrano initiated both meetings with Vasquez.

(11) Medrano was not aware that Vasquez would attend either meeting.

(12) The second meeting occurred as Greig drove Medrano to the airport. It was an unscheduled stop. Medrano had no prior knowledge and it caused Medrano to miss his flight.

(13) Medrano told Greig to stay away from Vasquez.

On cross-examination by the government attorney who prosecuted the criminal trial in which the jury was then deliberating, Greig testified that he knew Vasquez had an attorney. The prosecutor then attempted to elicit a statement from Greig that he, Greig, had tried to prevent Vasquez from testifying for the government for the benefit of his own case. Medrano objected and instructed his client to assert his fifth amendment rights against self-incrimination. Greig followed his counsel's instructions and the court terminated the cross-examination.

### Conclusion

The district court applied the wrong evidentiary standard in reaching its conclusion that Medrano should be disbarred. We must, therefore, reverse its decision and remand this matter for further proceedings consistent herewith.

REVERSED and REMANDED.