**In re COWBOY ROOFING, INC., Debtor.**

**Bankruptcy No. 94–41805.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Feb. 1, 1996.

G. Tomas Rhodus, Dallas, TX, for Interested Party.

Tim O'Neal, Staff Attorney, Tyler, Texas, for United States Trustee.

## MEMORANDUM OPINION ON MOTION FOR CONTEMPT AND FOR SANCTIONS

C. HOUSTON ABEL, Chief Judge.

Before the Court is a Motion For Contempt And For Sanctions ("Motion") filed by the United States Trustee. The United States Trustee requests: (1) the Court find that Jeffery D. Wagnon ("Wagnon") is in civil contempt for not complying with a prior order of the Court; (2) the Court impose sanctions against Wagnon under Federal Rule of Bankruptcy Procedure 9011 for filing a false Certificate of Compliance; and (3) that Wag-

non be suspended from practicing before the United States Bankruptcy Court for the Eastern District of Texas for a period not less than sixty days because of his actions. Wagnon responds by asserting that his actions were the result of good faith reliance on the advice of counsel and therefore he should not be penalized.

Based on the evidence and testimony from an evidentiary hearing held on October 7, 1995, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule Bankruptcy Procedure 7052. Where appropriate, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and 11 U.S.C. § 105(a).

### FINDINGS OF FACT

On October 20, 1994, Wagnon filed on behalf of the Debtor a voluntary petition for relief under Chapter 11 of Title 11. According to the Disclosure of Compensation of Attorney for Debtor filed pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), Wagnon received a $2,500.00 prepetition retainer. Most, if not all, of the $2,500.00 either came directly or indirectly from the father of the president of the Debtor.[1] Upon receipt of the $2,500.00, Wagnon deposited the money in his firm's operating account and not in a client trust account.[2] Although Wagnon agreed to represent the Debtor in the Chapter 11 case, he never filed an application to be employed as counsel for the Debtor as required by 11 U.S.C. § 327(a).

After no activity was recorded in the case since November 14, 1994, the United States Trustee filed on February 9, 1995, a Motion

---

1. The record is not clear exactly how much of the $2,500.00 came from the president's father. Because this is not a significant issue to the matter before the Court, the Court will not attempt to reconcile the conflicting testimony regarding this issue.

2. At the time the bankruptcy petition was filed, Wagnon operated under the name Jeffery D. Wagnon, P.C. On June 1, 1995, Wagnon became of counsel with the Law Offices of Robert E. Barron, P.C.

to Dismiss or Convert. The United States Trustee requested that the case be dismissed or converted because the Debtor had failed to propose a plan of reorganization, failed to file operating reports, and failed to pay the quarterly fees to the United States Trustee. The Debtor responded to the Motion to Dismiss or Convert by filing a Motion to Convert to a Case Under Chapter 7. On March 23, 1995, the Court entered an order converting the case to Chapter 7.

On May 8, 1995, the United States Trustee filed a Motion to Examine Debtor's Transactions With Attorney Pursuant to 11 U.S.C. § 329 ("Motion to Examine"). In the Motion to Examine, the United States Trustee requested that Wagnon be ordered to disgorge the entire $2,500.00 prepetition retainer he received because of the Debtor's failure to comply with the statutory requirements of a debtor-in-possession under Chapter 11 and because of Wagnon's failure to apply for and obtain an order approving his representation of the Debtor. At the hearing on the Motion to Examine held on August 8, 1995, the United States Trustee and Wagnon announced that they had an agreement on the matter. Pursuant to the agreement, Wagnon was to return the $2,500.00 to the individual who provided the money and provide satisfactory evidence that the money had been returned within ten days.[3]

Following the August 8th hearing, Wagnon telephoned the president of the Debtor, Raymond Bowden ("Bowden"), in order to arrange a meeting with him regarding the $2,500.00. During the telephone conversation, Wagnon informed Bowden of the order to disgorge the $2,500.00. Upon learning of the order, Bowden responded by saying that the order was "bullshit" because Wagnon had "earned" his fees. Because of Bowden's statement that Wagnon was entitled to the

money, Wagnon subsequently contacted attorney Robert Barron ("Barron") for advice regarding how to proceed. Barron informed Wagnon that the $2,500.00 must be returned because of the order. Barron further stated, however, that Bowden could thereafter give the money back to Wagnon if Bowden wanted Wagnon to have the money despite the order of the Court. Barron stressed to Wagnon that Wagnon should not get "screwed" out of a fee.

On August 11, 1995, Wagnon met with Bowden at the business operated by Bowden's father. Wagnon took with him to the meeting a $2,500.00 check dated July 15, 1995, payable to Bowden.[4] Because of the prior telephone conversation with Bowden, Wagnon asserts that he went to the meeting with the belief that Bowden was going to give the money back to him. During the brief meeting, Bowden endorsed the $2,500.00 check and returned the check to Wagnon as he anticipated. Bowden also signed a receipt prepared by Wagnon wherein Bowden states that he had "received" the check.[5] Although Wagnon accepted the endorsed check after being ordered to disgorge the money, he testified that he never stated to Bowden that the money could be used to pay for services rendered while the case proceeded under Chapter 7 and that he does not remember asking Bowden to endorse the check.

However, Bowden's version of what was said, or not said, at the August 11th meeting is different and more detailed than Wagnon's. According to Bowden, Wagnon never explained the significance of the order to disgorge the $2,500.00 nor informed him that he was under no obligation to return the money to Wagnon. Bowden testified that Wagnon merely told him that although the order prevented Wagnon from keeping the

---

**3.** The order reflecting the agreement on the Motion to Examine was entered on September 8, 1995. The order provided in relevant part that:
Wagnon shall disgorge and turnover all sums he received in connection with the instant bankruptcy proceeding to the party who provided such sums within ten (10) days of the date of the entry of this order.

**4.** Wagnon testified that the check was dated July 15th because that was the date he determined

that he was not entitled to keep the money as the result of his failure to request approval of his employment.

**5.** The receipt that was signed by Bowden states in full:

I, Ray Bowden, signify that I have received this check as a refund of fees in re: Cowboy Roofing, Inc.

$2,500.00 for services rendered while the case was proceeding under Chapter 11, the money could be used to pay for the services rendered while the case proceeded under Chapter 7. Bowden further testified that he was given the impression he had to return the $2,500.00 to Wagnon because the money was needed to pay for post-conversion services and because Wagnon specifically requested that he endorse the check. Thus, based on the statements made by Wagnon, Bowden returned the check to Wagnon.[6]

On August 21, 1995, Wagnon filed with the Court a Certificate of Compliance wherein he certified that he had complied with the agreement announced on August 8th.[7] By letter dated September 8, 1995, Wagnon provided the United States Trustee a copy of the July 15th check payable to Bowden and the receipt that was signed by Bowden. However, Wagnon did not provide the United States Trustee a copy of the back of the check that reflected Bowden's endorsement nor did Wagnon inform the United States Trustee that Bowden had returned the check to Wagnon. In an attempt to verify that Wagnon had indeed complied with the Court's order to disgorge the $2,500.00, a bankruptcy analyst with the United States Trustee's office contacted Bowden on September 14, 1995. As a result of the conversation with Bowden, the United States Trustee learned that Wagnon still had the $2,500.00. Accordingly, the Motion that is before the Court was filed by the United States Trustee.

Following the filing of the Motion, Wagnon contacted Barron once again for advice. Barron told Wagnon to file a motion for authority to deposit the $2,500.00 into the registry of the Court pending a resolution over the issue of whether Wagnon had complied with the order of the Court, which Wagnon did.[8] However, after talking to other attorneys about this matter, Wagnon determined that he should return the $2,500.00 to Bowden over the objection of Barron. On September 26, 1995, Wagnon sent Bowden a $2,500.00 cashier's check.

## CONCLUSIONS OF LAW

Inherent within the authority of a bankruptcy court is "the power to conduct a disciplinary hearing and discipline the attorneys who practice before it." *In re Johnson,* 921 F.2d 585, 587 (5th Cir.1991); *D.H. Overmyer, Co., Inc. v. Robson,* 750 F.2d 31, 33 (6th Cir.1984); *In re Placid Oil Co.,* 158 B.R. 404, 411–12 (N.D.Tex.1993); *In re Gunn,* 171 B.R. 517, 518 (Bankr.E.D.Pa.1994); *In re Kelton Motors, Inc.,* 109 B.R. 641, 649 (Bankr.D.Vt.1989); *In re Lowe,* 18 B.R. 20, 24 (Bankr.N.D.Ga.1981). Courts possess the power to discipline any attorney who practices before it in order to maintain the integrity of the court and the "respectability of the bar". *Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 6 L.Ed. 152 (1824). However, if a court suspends an attorney under its inherent powers, there must be a specific finding that the attorney's conduct constituted "bad faith". *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 341 (5th Cir.1993); *In re Thalheim,* 853 F.2d 383, 389 (5th Cir.1988). Because a suspension proceeding is quasi-criminal in nature, "a federal court may ... [suspend] an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction." *In re Medrano,* 956 F.2d 101, 102 (5th Cir.1992); *In re Thalheim,* 853 F.2d 383, 389 n. 9 (5th Cir.1988). The Fifth Circuit has defined this evidentiary standard as "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing

---

**6.** At the August 11th meeting, Bowden discussed with Wagnon about personally retaining Wagnon because the Internal Revenue Service is attempting to collect from Bowden unpaid payroll taxes of the Debtor. However, Wagnon was never retained by Bowden to assist with this matter. Accordingly, the $2,500.00 was not used to compensate Wagnon for services rendered for the personal benefit of Bowden.

**7.** The Certificate of Compliance provided in full:

The undersigned hereby certifies that he has complied with the Court's Order announced in open court on August 10 [sic], 1995.

**8.** The Motion for Order Approving Payment into Court Registry was filed on September 18, 1995. On October 11, 1995, an order was entered denying the motion.

as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Medrano,* 956 F.2d at 102 (quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)).

█ It is evident from the testimony of Bowden, whom the Court finds the most credible witness regarding what was said at the August 11th meeting, that Wagnon intentionally attempted to circumvent the order to disgorge the $2,500.00. The order to disgorge was unambiguous and its intent unmistakable—Wagnon was not to be compensated for the services he rendered in connection with this case. As an officer of the Court, Wagnon had a duty to explain to Bowden why he was being ordered to disgorge the money and to fully comply with the order. Instead of fulfilling his duty and complying with the order, Wagnon gave Bowden the impression that the $2,500.00 could be used to pay for alleged post-conversion services rendered by Wagnon and he thereafter requested Bowden to return the check to him. The Court is of the opinion that Wagnon deliberately failed to explain to Bowden the meaning of the order to ensure that he was not "screwed" out of a fee. The Court further concludes that the Certificate of Compliance filed by Wagnon was a deliberate attempt on his part to mislead the Court and the United States Trustee regarding his failure to comply with the order. If Wagnon honestly believed that it was proper for Bowden to "voluntarily" return the disgorged $2,500.00 to him, Wagnon would have disclosed in either the Certificate of Compliance he filed or in his letter to the United States Trustee that Bowden had endorsed the $2,500.00 check and returned the check to Wagnon. To the contrary, Wagnon remained silent regarding the return of the check until confronted by the United States Trustee.

Further, since Wagnon failed to be forthright with Bowden about the order to disgorge the $2,500.00, the Court gives little weight to Wagnon's claim that he only accepted the check back from Bowden because of Bowden's insistence. By not fully informing Bowden of the reason and the clear intent of the order, Wagnon deprived Bowden of the opportunity to make an educated decision. Additionally, the Court concludes that Wagnon deceived Bowden regarding alleged post-conversion services rendered by Wagnon as an attempt to justify the return of the check. Based on the testimony of Bowden and a review of the file, the Court is unable to determine what post-conversion services were rendered by Wagnon to warrant *any* additional fee.[9] Thus, even if the $2,500.00 could be used to compensate Wagnon for post-conversion services, such a fee would be very excessive. Accordingly, the Court concludes that Bowden did not make an informed voluntary decision to endorse and return the check to Wagnon but was instead deceived by Wagnon.

█ Finally, the Court rejects Wagnon's attempt to use "advice of counsel" as an attempt justify his action. First, Wagnon is an experienced attorney knowledgeable of the Bankruptcy Code and Rules as well as the corresponding duties imposed on an attorney representing a debtor. Since the Court ordered Wagnon to disgorge the money because of his failure to comply with the Bankruptcy Code and Rules, Wagnon should have known that any advice that circumvented the Court's ruling was not proper and should not have been followed. Secondly, there is no evidence that Barron advised Wagnon to mislead Bowden regarding Bowden's "right" to give the money back to Wagnon. Barron merely stated to Wagnon that Bowden had the "right" to give the money back to Wagnon. As noted herein by the Court, any "right" Bowden had to give the money back to Wagnon was first subject to Wagnon fully explaining to Bowden the reason why he was being ordered to disgorge the $2,500.00.[10] Not only did Wagnon fail to

---

9. Following the conversion of the case to Chapter 7, the Chapter 7 Trustee determined that this was a no asset case. No additional schedules were filed following the conversion to Chapter 7 and Wagnon did not attend the post-conversion meeting of creditors.

10. The Court disagrees with Barron that Bowden had the "right" to give the $2,500.00 check back

explain the order to Bowden, he also deceived Bowden regarding alleged post-conversion services rendered by Wagnon. Thirdly, Wagnon testified that he was not confused about the order requiring him to disgorge the $2,500.00. Thus, if statements were being made by Bowden that were making it difficult for Wagnon to comply with the order, Wagnon should have brought the matter to the attention of the Court rather than follow advice not consistent with the Court's order. Therefore, the Court concludes that Wagnon did not in good faith rely on the advice of Barron. *See United States v. West*, 22 F.3d 586, 598 (5th Cir.1994) (reliance on the advice of an attorney must be in good faith), *cert. denied*, —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994).

The fact that Wagnon has now complied with the Court's order eliminates the need for the Court to hold Wagnon in civil contempt. However, the belated compliance does not remedy the fact that Wagnon intentionally deceived the Court and the United States Trustee when he filed the Certificate of Compliance without disclosing that Bowden had given the $2,500.00 check back to him. It is the opinion of the Court that Wagnon acted in bad faith regarding his failure to comply with the order to disgorge the $2,500.00. The deceptive actions of Wagnon attacks the respectability and credibility of the bar. Because of the disrespect to the Court Wagnon has demonstrated by disregarding a valid order of the Court, Wagnon shall be suspended from practicing before the United States Bankruptcy Court for the Eastern District of Texas for ninety days starting from the date this order becomes final. Wagnon shall not file any cases nor assist in any manner with a case pending in the Eastern District of Texas until after the ninety-day suspension has expired. Furthermore, the Court will send a copy of this Memorandum Opinion and related order to the State Bar of Texas for review.

to Wagnon. Once the Court determines that an attorney is not to be compensated, the attorney may not circumvent the order by asserting that the debtor or a principal of the debtor is not bound by the order. Regardless of whether the

## ORDER ON MOTION FOR CONTEMPT AND FOR SANCTIONS

Before the Court is a Motion For Contempt And For Sanctions filed by the United States Trustee. For the reasons stated in the Memorandum Opinion to be entered concurrently with this order,

IT IS ORDERED that Jeffery D. Wagnon, State Bar No. 20661600, is suspended from practicing before the United States Bankruptcy Court for the Eastern District of Texas for **ninety (90) days** starting from the date this order becomes final; FURTHER,

IT IS ORDERED that Wagnon shall not file any cases nor assist in any manner with a case pending in the Eastern District of Texas until after the ninety-day suspension has expired.

IT IS SO ORDERED, ADJUDGED AND DECREED.

debtor or the debtor's principal is bound by the order, the attorney is still bound and the attorney may not use the discretion of a third party to avoid an order to disgorge.