# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1677

_____

| | | |
|---|---|---|
| In re:  Allen W. Bird, II, | * | Appeal from the United States |
| | * | District Court for the Western |
| Appellant. | * | District of Arkansas. |

_____

No. 03-1678

_____

| | | |
|---|---|---|
| In re:  Allen W. Bird, II, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Appellant. | * | District of Arkansas. |
| | * | [PUBLISHED] |

_____

Submitted:  September 12, 2003

Filed:  December 29, 2003

_____

Before BYE, FAGG, and HANSEN, Circuit Judges.

_____

PER CURIAM.

Allen W. Bird II was the trustee of three corporate bankruptcy estates in Arkansas.  After conducting a lengthy hearing, the bankruptcy court found Bird breached his fiduciary duty to the debtors' estates and committed fraud on the bankruptcy court.  The court imposed sanctions, ordered Bird to disgorge his fees, and charged him the fees of other attorneys.  Bird appealed, and the district court affirmed.  The bankruptcy court then referred the matter to the Arkansas federal

district courts for appropriate disciplinary action. Based on the findings of the Bankruptcy Court and on the District Court's memorandum and affirming order, the Chief Judges of the district courts[1] issued show cause orders citing violations of the Model Federal Rules of Disciplinary Enforcement, which the district courts had adopted to govern cases of attorney discipline. Bird responded. Acting apparently for all of the district judges of both districts, the Chief Judges then issued a joint order concluding Bird had violated Model Rule of Professional Conduct 8.4(c) and revoking Bird's privilege to practice law in Arkansas federal district courts.

Bird filed two notices of appeal from the joint order, asserting the district courts committed error in failing to give him the procedural protections available under the Model Federal Rules of Disciplinary Enforcement. Specifically, the relevant aspects of the Model Rules provide (1) the district court shall refer allegations of attorney misconduct to counsel for investigation, (2) after investigation, counsel shall file a recommendation with the district court, (3) if disciplinary proceedings are warranted, the district court shall issue a show cause order giving the accused attorney thirty days to respond, and (4) the district court shall conduct a hearing if the accused attorney wishes to dispute facts or to be heard in mitigation.

We agree with Bird that the district courts failed to follow precisely the four provisions noted above. We further agree with Bird that, having adopted procedural rules governing attorney discipline, the district courts should have followed them. See Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1198-99 (9th Cir. 1999); In re Thalheim, 853 F.2d 383, 386 (5th Cir. 1988); In re Abrams, 521 F.2d 1094, 1104 (3rd Cir.), cert. denied, 423 U.S. 1038 (1975). However, we conclude the district courts' deviation from the Model Rules was harmless in this case.

---

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas, and the Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

Bird's procedural challenges were lodged with the district courts, discussed and argued by his counsel in a reported telephone hearing with the Chief Judges, and rejected by them. The district courts, relying on their own precedent, noted the Model Federal Rules of Disciplinary Enforcement do not require in all instances a referral for investigation and prosecution of a formal disciplinary proceeding in cases of alleged misconduct. In re Starr, 986 F. Supp. 1144, 1149 (E.D. Ark. 1997).

The district courts found Bird had received adequate procedural protection and there was no need to refer the matter to counsel for investigation and prosecution. The bankruptcy court had conducted a lengthy ten-day hearing, during which Bird testified, and that record was available. Bird also appeared personally and through counsel at a hearing on his appeal from the bankruptcy court's order. Further, after the district courts issued the show cause order, Bird agreed there were no mitigating factors or facts that had not been presented to the bankruptcy court, and he substantially agreed with the bankruptcy court's findings of fact. Bird's defense was that although he agreed he had committed the acts found by the bankruptcy court, he did so inadvertently or negligently, not with the mens rea necessary to rise to the level of professional misconduct. In these circumstances, the district courts concluded Bird had adequate notice and an opportunity to be heard in a meaningful time and in a meaningful manner, and it was necessary neither to refer the matter to counsel for investigation and prosecution nor to conduct a new evidentiary hearing because there were no material facts in dispute.

Although the district courts should not have disregarded the Model Rules' referral and hearing requirements, Bird was not prejudiced because he was only challenging the legal conclusions to be drawn from undisputed facts, and he was heard through his counsel on those matters. Accordingly, we affirm.

BYE, Circuit Judge, dissenting.

For the first time, this court follows the well-settled precedent of other circuits and concludes the federal district courts must observe their own disciplinary rules when sanctioning lawyers for violations of ethical standards. See Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1198-99 (9th Cir. 1999); United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir. 1996); Matter of Thalheim, 853 F.2d 383, 386 (5th Cir. 1988); and Matter of Abrams, 521 F.2d 1094, 1104-1105 (3d Cir. 1975). In doing so, however, the majority also regrettably determines it was harmless error for the district courts to ignore their own local rules in the instant case.

In respectfully dissenting from such a holding, I review the process by which Allen W. Bird lost his privilege to practice law in the Arkansas federal courts after 35 years in the legal profession and 27 years of bankruptcy practice. First, in a bankruptcy proceeding, the bankruptcy court found Mr. Bird breached his fiduciary duty to the debtors' estates and committed fraud upon the bankruptcy court. Next, the court referred the matter to the appropriate Arkansas legal disciplinary authorities and, upon becoming dissatisfied with the progress or result of such investigation, lodged the complaint which initiated these parallel proceedings in the federal district courts. In turn, bypassing the procedural safeguards of the courts' own rules, which guaranteed lawyer Bird the opportunity to address the courts in mitigation at a formal hearing, the district courts allowed him the opportunity to be heard by telephone.[2]

---

[2]I note the majority bases its harmless-error analysis on the bankruptcy proceedings, not the telephone conference between Mr. Bird's attorney and the district courts. Indeed, a thorough and fair reading of the transcript reveals such conference did not advance past the procedural impasse in which the judges insisted the conference sufficed as an opportunity to be heard while lawyer Bird insisted the courts must refer the matter to counsel pursuant to Rule V of the courts' own rules.

Because lawyer disciplinary proceedings are adversarial and quasi criminal in nature, In re Ruffalo, 390 U.S. 544, 551 (1968), Thalheim, 853 F.2d at 388, they differ from civil proceedings in at least two respects. First, in disciplinary proceedings, the lawyer's alleged misconduct must be proved by clear and convincing evidence, an evidentiary standard higher than the mere preponderance which suffices in civil actions. In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992) (reversing disbarment because the district court had based its findings on the preponderance standard).

Second, an attorney who is found to have violated his professional duties retains the right to address the court before it imposes discipline; in fact, even an attorney who commits gross and outrageous conduct in open court "should be heard before he is condemned." Ex Parte Robinson, 86 U.S. (19 Wall.) 505, 512-13 (1873). In our own court, we have insisted upon a lawyer facing disbarment must be heard in mitigation even when the facts underlying the lawyer's misconduct are not in dispute. See Matter of Jones, 506 F.2d 527, 529 (8th Cir. 1974) (remanding for a second disbarment hearing to ensure attorney convicted of a felony by the same court had opportunity to speak in mitigation). See also Groppi v. Leslie, 404 U.S. 496, 504 (1972) (recalling even those who commit contempt under the court's eye have been given the opportunity to speak in the nature of a right of allocution); Eash v. Riggins Trucking, Inc., 757 F.2d 557, 571 (3d Cir. 1985) (explaining attorney's words in mitigation "will afford the judge adequate time to evaluate the propriety of the particular sanction in light of the offending attorney's explanation as well as to consider alternatives.").

As I read them, the Model Rules, from which the district courts adopted as their own the lawyer disciplinary rules, embody these procedural safeguards. First, in requiring the courts to refer disciplinary complaints to counsel "for investigation and the prosecution of a formal disciplinary proceeding," Rule V(A) contemplates an adversarial and quasi-criminal process by which the accused lawyer can put counsel

to the burden of proving the alleged misconduct by the higher evidentiary standard.[3] Likewise, Rule V(D) requires disciplinary proceedings against a lawyer culminate in a "prompt hearing before one or more judges" of the court, not only when the lawyer raises an issue of fact, but also whenever "the respondent-lawyer wishes to be heard in mitigation."

Moreover, the hierarchical scheme of the Model Rules reflects the essential character of these procedural safeguards. Three types of reports may trigger lawyer discipline: Another court's order imposing discipline, a certificate of criminal conviction, or a complaint such as the one involved here. When acting upon the first, the district courts may impose so-called reciprocal discipline without providing the procedural safeguards; after all, another court has already treated the underlying conduct as a disciplinary matter, and ushering out these protections again would amount to mere formality. When acting upon a certificate of conviction, in contrast, the district courts still need not to refer the matter to counsel, as the lawyer's conduct has already been the subject of prosecution under a heightened evidentiary standard, but must now give the lawyer the opportunity to be heard in mitigation. Finally, where the lawyer has not enjoyed the safeguards in prior proceedings and his misconduct necessarily comes to the attention of the court as a complaint, the Model Rules require the district courts to **BOTH** refer the matter to counsel **AND** hold a formal hearing. The Rules make no exception for complaints of civil wrongs.

---

[3]Indeed, the Model Rules and case law suggest it is improper for the court receiving a complaint of misconduct to both prosecute and adjudicate the complaint. As the preamble to the Model Rules states regarding the court's duty to supervise the attorneys practicing in its bar, "the proper discharge of that duty requires that the [c]ourt have the assistance of counsel to investigate and prosecute where there are appropriate allegations . . . ." See Statement of Need for Adopting, Model Federal Rules of Disciplinary Enforcement. See also In re Crayton, 192 B.R. 970, 978 (9th Cir. B.A.P. 1996) (explaining that referral to counsel relieves a court from the awkward role of serving as both prosecutor and arbiter in disciplinary matters).

In this vein, the majority's harmless-error analysis vitiates an entire branch of the Model Rules's disciplinary scheme. To explain, where a court receives a certificate of conviction, it "shall . . . refer the matter to counsel for the institution of a disciplinary proceeding before the [c]ourt in which the sole issue to be determined shall be the extent of the final discipline to be imposed as a result of the conduct resulting in the conviction." Model Federal Rules of Disciplinary Enforcement I(D). If it is harmless error to deny lawyer Bird the opportunity to be heard in allocution, it is difficult to imagine when it would *not* be harmless error to deny such opportunity to a lawyer previously convicted of a serious crime.

Along these lines, the majority's harmless-error analysis is also irreconcilable with our own precedent. In <u>Jones</u>, the district court disbarred a lawyer who had been convicted of the felony of filing false income tax returns. Though the attorney had been tried and convicted in the same court, the district court held a separate disbarment hearing on the merits, and the lawyer presented no mitigating evidence. Nevertheless, to ensure the lawyer had the benefit of a "full hearing," we remanded the case with instructions the district court permit the lawyer "to present any evidence of mitigation . . . that he desire[d]." 506 F. 2d at 529.

With the foregoing in mind, one need not exalt form over substance to conclude the district courts should have followed the Model Rules. True, the bankruptcy court had adjudicated the facts and Mr. Bird agreed with *its* findings, but, where so much was at stake, Mr. Bird had the due process right to hold the disciplinary authorities to the burden of proving his conduct amounted to an *ethics* violation under the higher clear and convincing standard that applies in disciplinary proceedings. See <u>Medrano</u>, 956 F.2d at 102 (holding party moving for disbarment bears burden of proving all elements of an ethics violation by clear and convincing evidence). If shown to have violated his professional duties, lawyer Bird then also deserved the opportunity to present defenses and entreat the courts for a lighter penalty than the full revocation of his privilege to practice law. In short, the

deprivation of the procedural safeguards worked prejudice upon Mr. Bird's defense to the disciplinary charges, and under these circumstances, I cannot agree the district courts' failure to follow the Model Rules was harmless error.

It needs saying that Rule X of the Model Rules required the district courts to refer the complaint to the state's disciplinary agency, the same body with whom Mr. Bird, in the parallel state proceedings, reached a settlement suspending him for a year. "In the United States, admission to the bar and discipline of attorneys is peculiarly within the province of the states," Abrams, 521 F.2d at 1105 (Rosenn, J., concurring), and "disciplinary proceedings are best reserved to [the states'] independent bodies which have been created to investigate charges of unprofessional conduct and to prosecute disciplinary proceedings." Crayton, 192 B.R. at 977-978. See also In re Dreier, 258 F.2d 68, 69-70 (3d Cir. 1958) (remanding district court's denial of admission to its bar so court could give due deference to state's finding attorney possessed fitness to practice). Despite its traditional stewardship over disciplinary matters and despite acting upon the same bankruptcy record and complaint as the district courts, the state agency here determined a temporary suspension was appropriate under all the circumstances. Evidently, as far as the state of Arkansas was concerned, it was not a foregone conclusion the facts emerging from the bankruptcy hearing would result in lawyer Bird's disbarment.[4]

Ultimately, the district courts' actions and the majority's position reflect poorly upon the federal judiciary itself. The district courts adopted the Model Rules. The practicing bar should therefore be allowed to proceed with the confidence and the assurance courts will follow the rules they themselves did adopt and can freely

---

[4]The parallel state and federal proceedings against Mr. Bird also raise serious concerns for the judiciary. For one, by issuing disparate penalties for the same conduct, the state and federal courts implicitly call into considerable question the regularity and reliability of each such disciplinary system. See Abrams, 521 F.2d at 1105-06 (Rosenn, J., concurring).

amend.  <u>See</u> <u>Thalheim</u>, 853 F.2d at 390.  It takes an exquisite talent for irony for the courts to punish a rule breaker with one hand while they break their own rules with the other.  Such inconsistency should not be allowed to prevail in modern-day court/lawyer interface.  Thus, this dissent.

_____