CHANDLER, Justice,
dissenting:
¶ 50. It has been this Court’s consistent holding that clear and convincing evidence is required to support a finding of judicial misconduct. Mississippi Commission on Judicial Performance Rule 8D. Today the majority appears to abandon that standard because the evidence it cites supporting the Commission’s finding that Judge Carver engaged in ticket-fixing is insubstantial. Therefore, I respectfully dissent.
¶ 51. “Clear and convincing evidence” has been defined as:
that weight of proof which “produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts” of the case.
In re Medrano, 956 F.2d 101, 102 (5th Cir.1992) (quoting Cruzan by Cruzan v. Director, Mo. Dep’t of Health, 497 U.S. 261, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)).
¶ 52. The majority rests Judge Carver’s sanctions on two findings: (1) that Judge Carver discussed Roche’s pending charges at the visit at Judge Carver’s house, and that (2) Judge Carver dismissed Roche’s five tickets under the deliberate false pretense that the prosecutor and officers were not in court when the case was called. The majority finds that Roche must have called the courthouse to obtain his arraignment date, and that Roche was lying when he said he still had felt he needed more information from Judge Carver. But Roche was fifty-nine years old with a sixth-grade education, hard-of-hearing, had *977 trouble reading and writing, and his testimony was confusing. At the time of his detention by Gex and Grimsley, Roche had been gathering twenty oysters to make a sandwich. Klein’s testimony was plausible that he had brought Roche to Judge Carver’s house, at his father’s suggestion, for the purpose of allowing Roche to ascertain the location of the courthouse and whether he had to appear on the arraignment date. There was no evidence contradicting the testimony of Klein, Roche, and Judge Carver about the conversation. The discrepancies in the testimony pointed out by the majority fall woefully short of providing clear and convincing evidence that Roche asked Judge Carver to “fix” the tickets. To the contrary, such minor discrepancies are precisely what one would expect from three witnesses to an under-ten-minute, casual conversation that occurred more than a year before the Committee hearing.
¶ 53. .Further, the evidence surrounding the dismissal of the tickets amounted to nothing more than a swearing match between Judge Carver and Officers Grimsley and Gex. Grimsley and Gex testified that they were present in court when Roche’s trial was called, that Roche was not present, and that Judge Carver had continued the case to July 12. In contrast, Judge Carver testified that, when the trial was called, neither the prosecutor nor the officers were in court, so he dismissed the tickets. No one corroborated the officers’ version of events. Grimsley admitted that he had not remained in the courtroom during the entire time that court was in session, but he testified that he had spent part of the time sitting inside the clerk’s office. Bremer corroborated that Gex was in court before the 10:00 a.m. docket call, but he was unable to confirm his presence after 10:00 a.m. Anderson was unable to corroborate the presence of the officers. It was undisputed that officers attending the Hancock County Justice Court habitually wander in and out of the courtroom while court is in session. And only Gex and Grimsley confirmed that, in fact, the pair returned to court on July 12 for a reset trial date. Anderson testified that there had been a problem with cases being dismissed for “officer not in court,” suggesting a motive for the officers to lie about their absence. There was nothing in the record corroborating the testimony of Gex and Grimsley that would elevate the proof to clear and convincing evidence.
¶ 54. The majority strains reason by finding that evidentiary conflicts materially discredited Judge Carver’s testimony. The majority cites the following in support of its finding that Judge Carver dismissed the tickets under false pretenses: that Roche said the courtroom was not “packed with people,” while other witnesses said it was crowded; that the officers’ testimony, Bremer’s testimony, and the call logs supported their presence in court that day, although Judge Carver said they did not appear at the time the case was called; and that neither Gex, Grimsley, nor Anderson recalled Judge Carver’s set-aside offer. While perhaps sufficient to support a mere suspicion of misconduct, the slight evidentiary conflicts identified by the majority simply do not elevate the quantum of proof to “clear, direct and weighty and convincing” evidence such that this Court, as fact-finder, can “come to a clear conviction, without hesitancy,” that Judge Carver engaged in ticket-fixing. In re Medrano, 956 F.2d 101, 102 (5th Cir.1992).
¶ 55. The majority errs by equating insubstantial evidence of judicial misconduct with clear and convincing evidence. I would find that no sanctions are warranted. Judge Carver’s admitted action of dismissing the tickets because the officers and prosecutor were not in court when the case was called is not sanctionable. While *978 the majority finds that a justice court judge may not dismiss a ticket without a hearing, Judge Carver did hold a hearing on Roche’s tickets — one that was not attended by the prosecutor or the officers. Mississippi Attorney General Opinion No.2008-00415 states “[i]f the prosecuting attorney fails to attend court to prosecute a case properly set for trial the court may continue the case for good cause or may dismiss the case.” Strait, Op. Miss. Att’y Gen.2008-00415 (August 22, 2008). Because a judge may not be sanctioned for a mistake of law, and the attorney general’s opinion provides some authority for Judge Carver’s actions, Judge Carver’s dismissal of the tickets on the ground that the prosecutor and officers were absent for trial was, at most, a mistake of law and not sanctionable. Miss. Comm’n on Judicial Performance v. Martin, 921 So.2d 1258, 1268 (Miss.2005).
¶ 56. Judge Carver has served his community for twelve years as a justice court judge. In that capacity, Judge Carver likely handles as many as one hundred cases per month. Multiply that by the number of months he has presided during the twelve-year period, and one can appreciate the number of cases he has decided, with no indication of wrongdoing on his part until this single incident. Yet, the majority concludes that Judge Carver has engaged in misconduct based upon uncorroborated evidence and immaterial conflicts in the testimony. Therefore, I respectfully dissent.
DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.