**THE STATE BAR OF TEXAS, Appellant,**

v.

**Bernard J. DOLENZ, Appellee.**

**No. 05–97–00676–CV.**

Court of Appeals of Texas, Dallas.

Oct. 18, 1999.

Linda A. Acevedo, Austin, James D. Blume, Blume & Stoddard, Dallas, for appellant.

Jack Thomas Jamison, Dallas, for appellee.

Before Justices KINKEADE, MOSELEY, and O'NEILL.

## OPINION

Opinion By Justice MOSELEY.

A jury found that attorney Bernard J. Dolenz violated several provisions of the Texas Code of Professional Responsibility and/or Texas Disciplinary Rules of Professional Conduct by: (1) improperly soliciting Dmitri Vail's legal business; (2) entering into a prohibited business transaction with Vail; and (3) representing another person in a matter adverse to Vail. However, the trial court rendered judgment notwithstanding the verdict in favor of Dolenz. The State Bar contends the trial court erred in rendering judgment notwithstanding the verdict on issues two and three.[1] Dolenz responds there is no evidence to support the jury's findings. In the alternative, he contends in seven cross-points that the evidence is factually insufficient to support the findings.

We conclude the evidence is legally and factually sufficient to support the jury's findings regarding Dolenz's prohibited business transaction with Vail and Dolenz's representation of another in a matter adverse to Vail. Therefore, we reverse the trial court's judgment, reinstate the jury's verdict as to questions two and three and the State Bar's attorney's fees, and remand the cause to the trial court for a determination of the appropriate sanction or sanctions to be imposed. We publish this opinion pursuant to Texas Rule of Disciplinary Procedure 6.06. *See* TEX.R. DISCIPLINARY P. 6.06, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 1998).

### BACKGROUND

Vail, a well-known portrait artist, was deceased at the time of this trial. Dolenz was not present at trial, but he was represented by counsel. Thus, the State Bar presented its case largely through Dolenz's deposition testimony.

Dolenz testified he first met Vail in July 1989 when Dolenz went to Vail's house to look at his artwork. According to Dolenz, Vail was in his seventies at the time.[2] Vail

---

1. The State Bar concedes there is no evidence to support the jury's finding concerning Dolenz's solicitation of Vail's business.

2. According to a psychiatrist who examined Vail, Vail was born in 1903. The psychiatrist's affidavit was attached to the State Bar's response to Dolenz's motion for summary judgment and was not admitted into evidence at trial.

learned Dolenz was a lawyer and asked if Dolenz would do some legal work for him. Vail explained he was the beneficiary of a trust set up by an ex-wife and that he felt the trust was being mismanaged. Dolenz looked into the matter for Vail and concluded one of the trustees, NCNB bank, had breached its fiduciary duty. In August 1989, Vail hired Dolenz to represent him in an action against NCNB. They entered into a written contingency fee agreement, and Vail also agreed to pay the expenses Dolenz incurred in representing him. Vail further gave Dolenz a written power of attorney "to act in [his] behalf." On Vail's behalf, Dolenz filed a lawsuit against NCNB. The suit was removed to federal court.

Vail also hired Dolenz to help recover some of Vail's paintings. Dolenz explained that some of Vail's paintings had "disappeared" and Vail was having trouble recovering them. For example, one person had taken some of Vail's paintings to sell for him and had not returned the unsold works. On August 29, 1989, Dolenz and Vail entered into a contract regarding recovery of the paintings. Vail agreed to pay Dolenz $200 an hour for the time Dolenz spent on recovery of the paintings and $5000 for each painting recovered. Dolenz testified he recovered fifteen to seventeen of Vail's paintings.

Also on August 29, 1989, Dolenz set up a trust for Vail. The corpus of the trust consisted of all Vail's paintings and artwork located at Vail's residence and several other specific locations, as well as those works at "area restaurants in Dallas, TX, among other places"; all rights and copyrights to any of Vail's artwork; and all furnishings, clothes, and personal effects located at Vail's residence. The sole beneficiary of the trust was Dolenz. Dolenz's daughter Brenda Lievrouw notarized the trust instrument. Dolenz charged Vail $3000 to set up the trust.

In the fall of 1989, Vail executed four promissory notes payable to Dolenz. According to Dolenz, the first note, for $19,-372.70, was payment for professional services Dolenz rendered to Vail, including recovery of two paintings and the payment of an outstanding judgment in favor of a third party against Vail. The second note was for $1000 that Dolenz had loaned Vail for living expenses. The third note was for $23,002.23, the amount of a bill Dolenz sent Vail for his services through October 16, 1989. The note was secured by "all paintings and copyrights created by Dmitri Vail and which are located presently at his home." The note further provided that the "paintings may remain at this residence, but may be removed at any time ONLY by Bernard Dolenz or his agent/s." The fourth note was for $52,500. Dolenz testified it was payment for recovery of ten paintings ($50,000) and for a $2500 loan. That note was secured by "all paintings, artwork of whatsoever kind, created by Dmitri Vail, wherever located along with all negatives, prints, copyrights" and "all easles [sic], frames, art equipment, personal jewelry, and personal effects belonging to Dmitri Vail." Dolenz later assigned all four notes to his daughter, Lievrouw.

In January 1990, Vail remarried. According to Dolenz, Vail's new marriage caused Dolenz's relationship with Vail to deteriorate. In the spring and summer of 1990, Dolenz sent Vail a series of letters written on Dolenz's professional letterhead. In a letter written in March, Dolenz informed Vail the promissory notes had been assigned to Lievrouw and stated, "I understand that she [Lievrouw] is making demands to have these notes paid."

On April 12, 1990, Lievrouw and Dolenz went to Vail's house with a moving van to pick up the paintings that were collateral for the notes. Vail's wife called the police. After the police arrived, Lievrouw and Dolenz left without the paintings. Dolenz could not remember why he had been present, but denied he had been acting as his daughter's attorney. That same day, Dolenz wrote to Vail: "You should understand that the collateral used for the notes

that have been assigned to Brenda Lievrouw is encumbered and that you cannot make any disposition of this collateral until you have satisfied the notes that Mrs. Lievrouw has."

Also on April 12, Dolenz filed a motion to withdraw as Vail's counsel in the suit against NCNB. On May 8, 1990, the federal court granted Dolenz's motion to withdraw.[3] However, the day after that motion was filed and before it was heard, Lievrouw sued Vail in a justice of the peace court. The court's docket sheet on that case reflects Lievrouw was represented by Dolenz, and Dolenz acknowledged at trial he filed that suit as his daughter's attorney. The justice of the peace court's docket sheet also reflects Vail filed a motion to disqualify Dolenz and a motion for sanctions.

Although Dolenz was no longer the owner of the notes, he continued to make written demands on the notes. In a June 14 letter to Vail, Dolenz mentioned Lievrouw's visit to Vail's house and said "she did not forcibly come to take her collateral.... You had agreed that the paintings could be taken at any time." The letter also said, "All that Brenda Lievrouw desires is that you pay what you promised. She does not want your paintings. She does want her money collateralized as you promised." In a July letter, Dolenz wrote: "You represented that you were coming into millions of dollars.... If any of this is really true, just sell one of your paintings and pay your note debt to Brenda Lievrouw as you promised you would do. She does not want your paintings as they really have no market value as you have already discovered through no sales over the past several years." Dolenz also wrote, "As for the notes, you signed them in the presence of witnesses, after the content was reviewed with you."

Vail eventually filed a grievance against Dolenz. Vail died in December 1991.

The State Bar filed this disciplinary action in 1992. The State Bar alleged Dolenz violated various rules of professional conduct by (1) improperly soliciting Vail's legal business; (2) entering into a prohibited business transaction with Vail to recover and market Vail's paintings and failing to promptly deliver the recovered paintings to Vail; and (3) representing Lievrouw in a matter adverse to Vail. On January 1, 1990, the Texas Disciplinary Rules of Professional Conduct replaced the Texas Code of Professional Responsibility. Because Dolenz's actions allegedly occurred in 1989 and 1990, in its disciplinary petition, the State Bar alleged Dolenz violated specific provisions of both the rules and the code.

The trial court instructed the jury on the relevant provisions of both the Texas Disciplinary Rules of Professional Conduct and the Texas Code of Professional Responsibility and submitted to them three questions regarding Dolenz's alleged ethical violations. The jury answered all three questions against Dolenz and also awarded the State Bar attorney's fees. However, the trial court rendered judgment notwithstanding the verdict in favor of Dolenz. This appeal followed.

The State Bar contends the trial court erred in rendering judgment notwithstanding the verdict because there is evidence to support the jury's findings regarding: (1) Dolenz's business transaction with Vail and his failure to promptly return Vail's paintings; and (2) Dolenz's representation of his daughter in a matter adverse to Vail. Dolenz maintains there is no evidence to support the jury's verdict. In the alternative, he asserts seven cross-points in which he contends we should remand for a new trial because the evidence is factually insufficient to support the jury's findings.

STANDARD OF REVIEW

■■■ To uphold the trial court's judgment notwithstanding the verdict, we must

---

3. Dolenz testified Vail ultimately did not prevail on his suit against NCNB because Vail failed to respond to summary judgment motions.

determine that no evidence supports the jury's findings. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 513 (Tex. 1998); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). We review only the evidence and inferences tending to support the jury's verdict and must disregard all evidence and inferences to the contrary. *Mancorp,* 802 S.W.2d at 227. If more than a scintilla of evidence supports the jury finding, it must be upheld. *Id.* at 228.

■ When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407.

### BUSINESS TRANSACTION REGARDING RECOVERY OF VAIL'S PAINTINGS

■ In its first point of error, the State Bar contends the trial court erred in rendering judgment notwithstanding the verdict because there is evidence to support the jury's finding that Dolenz violated the rules of professional conduct by entering into a prohibited business transaction with Vail and by failing to promptly return Vail's paintings. The jury was asked about these issues in Question No. 2:

> Do you find from a preponderance of the evidence that the conduct of Bernard Dolenz with respect to his business relationship, if any, with Dmitri Vail to recover of [sic] the paintings of Mr. Vail was in violation of Texas Code of Professional Responsibility DR 5–104(A) and Texas Disciplinary Rule of Professional Conduct Rules 1.04(a), 1.08(a), 1.14(b), and 8.04(a)(3)?[4]

The jury answered, "We do."

The State Bar specifically contends there is evidence Dolenz violated DR 5–104(A). In connection with Question No. 2, the jury was instructed that DR 5–104(A), in effect until December 31, 1989, provided: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." TEX. STATE BAR R., art. XII, § 8, DR 5–104(A) (Tex.Code of Prof'l Resp.), 34 TEX. B.J. 758 (1971, superseded 1990). In its disciplinary petition, the State Bar alleged that in August 1989, Dolenz entered into a business transaction with Vail to recover certain paintings and to market them by opening an art gallery.

Dolenz contends his agreement with Vail to recover paintings was merely an "attorney employment/fee agreement." Dolenz further contends the evidence is insufficient to prove: (1) he and Vail had differing interests; (2) Vail expected Dolenz to exercise his professional judgment for Vail's protection; and (3) Vail did not consent after full disclosure.

Business relationships between lawyers and clients are beset with conflicts of interest and will often involve situations in which the lawyer occupies a dangerously superior bargaining position. CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 8.11.1 (1986). Clients are vulnerable to lawyer overreaching because of their trust in their

**4.** The State Bar does not seek a reversal of the trial court's judgment notwithstanding the verdict regarding Dolenz's alleged violation of rule 8.04(a)(3). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1999) (TEX. STATE BAR R. art. X, § 9) ( providing that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Nor does the State Bar assert there is evidence Dolenz violated rule 1.04(a). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a) (involving illegal or unconscionable fees). The State Bar's disciplinary petition did not allege a violation of rule 1.04(a).

lawyers and because of their lawyers' presumed superior professional knowledge and skill. *Id.* § 8.11.3. The strict scrutiny standard applies to all business dealings between lawyer and client. *Id.* Business deals with clients will be subjected to an even stricter scrutiny if the client is elderly. *See id.*

Here, the record reflects Dolenz and Vail entered into the contract regarding recovery of the paintings in August 1989. Dolenz also set up a trust for Vail, and Dolenz was the sole beneficiary of the trust. The corpus of the trust consisted of all of Vail's paintings and artwork located at Vail's residence and other locations, all rights and copyrights to any of Vail's artwork, and all furnishings, clothes, and personal effects at Vail's residence. The jury was shown a videotape Dolenz made of the various paintings Vail had at his house.

In the fall of 1989, Vail executed four promissory notes payable to Dolenz totaling almost $100,000. One of the notes was secured by "all paintings and copyrights created by Dmitri Vail and which are located presently at his home." Another note was secured by "all paintings, artwork of whatsoever kind, created by Dmitri Vail, wherever located."

Other evidence shows that, in addition to recovering Vail's artwork, Dolenz was actively involved in marketing it. On September 12, 1989, Dolenz wrote the following in a letter to Vail: "I am trying to locate your paintings and bring them back together again for the Trust that you established so that you can have a 'really big showing' in the next few months." Dolenz's bill reflects he charged Vail for telephone calls that involved the promotion of Vail's work. On September 15, Dolenz visited with "CB and Al at the World Trade Center" regarding the potential display of Vail's paintings. In October, Dolenz had a telephone call from Vail "re-

garding meeting at the Venetian Room with some of his friends to promote some of his paintings" and another to discuss the "Fairmont meeting for art promotion." The bill also reflects that in October, a friend of Vail's, Lois Williams, contacted the Liberace Museum in Las Vegas regarding the sale of a Vail painting of Liberace.

We conclude there is more than a scintilla of evidence to support the jury's finding that Dolenz and Vail had differing interests in the business relationship regarding the paintings and that Vail expected Dolenz to exercise his professional judgment for Vail's protection.[5] Contrary to Dolenz's assertions, the record contains legally sufficient evidence that the business transaction regarding the paintings was more than merely an attorney/client relationship. Dolenz secured a personal interest in Vail's artwork and attempted to market it. From the evidence that Dolenz made himself the beneficiary of a trust consisting of Dolenz's artwork and that Vail's artwork was collateral for the notes, the jury could have reasonably inferred that Dolenz and Vail had differing interests in the transaction. The jury could also have inferred that, because Dolenz was Vail's attorney, Vail expected Dolenz to exercise his professional judgment for Vail's protection.

We now consider Dolenz's assertion that the evidence is legally insufficient to prove Vail did not consent to the business transaction after full disclosure. As noted above, at the relevant time, DR 5–104(A) provided: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, *unless the client has consented after full disclosure.*" Tex. State Bar R., art. XII, § 8, DR 5–104(A)

---

5. Dolenz contends the only document relevant to Question No. 2 was the agreement for recovery of the paintings. We conclude that other documents, such as the trust, letters written by Dolenz, and the bill he sent Vail, are relevant to the agreement for recovery of the paintings.

(Tex.Code of Prof'l Resp.), 34 TEX. B.J. 758 (1971, superseded 1990) (emphasis added). There is no evidence in the record to show Dolenz failed to give full disclosure or to show Vail did not consent. Indeed, the State Bar does not assert there is. It instead asserts Dolenz bore the burden of proof on this issue.

We have found no Texas case directly addressing who has the burden of proving, in a disciplinary proceeding, that a client's consent to a transaction governed by DR 5–104(A) was given with or without full disclosure. Generally, disciplinary actions must be proved by a preponderance of the evidence. *See* TEX.R. DISCIPLINARY P. 3.08(C). Thus, in a proceeding seeking disciplinary action for violation of DR 5–104(A), the State Bar had the burden of proving Dolenz entered into a business transaction with Vail in which they had differing interests, and that Vail expected Dolenz to exercise his professional judgment in that transaction for Vail's protection. However, whether Vail received full disclosure before he consented to the transaction at issue is a matter constituting an avoidance or affirmative defense to the State Bar's claim of professional misconduct. *See* TEX.R. CIV. P. 94.

One commentator has also said that when a client attacks the validity of a transaction with a lawyer, the lawyer has the burden of justifying the transaction:

> While DR 5–104(A) says nothing about the fairness of the underlying transaction, courts and disciplinary agencies have been significantly influenced by the underlying common-law rules governing transactions between fiduciaries and their clients and wards. In general, the established common-law doctrine is that a client who attacks the validity of a transaction with a lawyer can prevail after showing only that the disadvantageous transaction was entered into with a lawyer-fiduciary. In order to uphold the transaction, the lawyer has the burden of showing that he or she took no advantage of the lawyer-client relationship.

WOLFRAM, at § 8.11.3. Further, in disciplinary proceedings based on a business transaction between an attorney and client, several other states have placed the burden on the attorney to justify the transaction. *See, e.g., In re Imming*, 131 Ill.2d 239, 137 Ill.Dec. 62, 545 N.E.2d 715, 722 (1989); *Iowa Supreme Court Bd. of Prof'l Ethics and Conduct v. Sikma*, 533 N.W.2d 532, 535 (Iowa 1995); *In re McMullen*, 127 Wash.2d 150, 896 P.2d 1281, 1288 (1992); *cf. X Corp. v. Doe*, 805 F.Supp. 1298, 1308–10 (E.D.Va.1992) (in disciplinary action involving violation of rule requiring preservation of a client's confidences and secrets, attorney has burden to show he was permitted to reveal confidential information), *aff'd*, 17 F.3d 1435 (4 th Cir.1994). *But see State ex rel. Neb. State Bar Ass'n v. Thor*, 237 Neb. 734, 467 N.W.2d 666, 676 (1991) (the bar must show client consented to transaction without full disclosure).

Lastly, as a general rule, it makes more sense to require Dolenz to affirmatively prove the existence and extent of his disclosure to Vail, than to require the State Bar to negate such disclosure. *See City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex.App.-Houston [14 th Dist.] 1995, no writ) (takings case).

Dolenz cites one case, *In re Medrano*, 956 F.2d 101 (5 th Cir.1992), for the proposition that the State Bar had the burden to prove Vail did not receive full disclosure before he consented to the transaction. *Medrano* involved a federal court judgment disbarring an attorney for communicating with a party represented by another attorney, in violation of Texas Disciplinary Rule of Professional Conduct 4.02.[6] The

---

6. Rule 4.02 provides:

 (a) In representing a client, a lawyer shall not communicate . . . about the subject of the representation with a person . . . the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

question in dispute was whether the lawyer or someone else initiated the allegedly prohibited communication. *Id.* at 103. The Fifth Circuit reversed and remanded the case for further proceedings because the trial court based its findings of fact on a preponderance of the evidence standard, rather than the clear and convincing evidence standard applicable to disbarment proceedings in federal court. *Id.* at 102, 105. In doing so, *Medrano* discussed the procedures involved in a disciplinary proceeding in passing, and stated: "All elements of a violation of Rule 4.02, including proof that the lawyer initiated the prohibited communication, must be established by clear and convincing evidence." *Id.* at 103.

However, we do not find the language cited from *Medrano* persuasive. First, the dispositive issue in *Medrano* was the *nature* of the burden of proof required to obtain an order disbarring an attorney in federal court (*e.g.,* clear and convincing evidence versus a preponderance of the evidence), not the *allocation* of that burden with respect to a matter that would render the communication nonviolative of the disciplinary rules. The issue of which party had the burden to prove who initiated the communication was apparently not an issue raised by the parties and was not an issue expressly considered by *Medrano*. Thus, the statement quoted is dictum. Second, the statement quoted from *Medrano* is made without any accompanying analysis; it is a pronouncement, not a rationale.

■ We conclude that whether Vail's consent to his business transaction with Dolenz was made after he received full disclosure concerning the transaction is in

the nature of an avoidance or affirmative defense to professional misconduct. *See* Tex.R. Civ. P. 94. Dolenz had the burden to plead and prove Vail consented to the transaction after full disclosure, if he sought to rely on that as a defense to violation of DR 5–104(A). *Id.*

There is more than a scintilla of evidence that Dolenz and Vail had differing interests in the business relationship regarding the paintings and Vail expected Dolenz to exercise his professional judgment for Vail's protection. Further, Dolenz did not conclusively prove that Vail consented after full disclosure. Thus, the evidence supports the jury's finding that Dolenz violated DR 5–104(A), and the trial court erred in rendering judgment notwithstanding the verdict on this issue.[7] We sustain the State Bar's first point of error.

In his first and second cross-points, Dolenz challenges the factual sufficiency of the evidence that he violated DR 5–104(A). Having considered and weighed all of the evidence, not just the evidence that supports the verdict, we cannot conclude the jury's finding that Dolenz violated DR 5–104(A) is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Accordingly, we overrule Dolenz's first and second cross-points.

Because we have determined there is evidence to support the jury's finding in Question No. 2 that Dolenz violated DR 5–104(A), we would normally not consider the State Bar's assertion that there was evidence Dolenz violated another rule mentioned in Question No. 2, disciplinary rule of professional conduct 1.14(b). How-

(d) When a person ... that is represented by a lawyer in a matter seeks advice regarding that matter from another lawyer, the second lawyer is not prohibited by paragraph (a) from giving such advice without notifying or seeking consent of the first lawyer.
Tex. Disciplinary R. Prof'l Conduct 4.02, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G

app. A (Vernon Supp.1999) (Tex. State Bar R. art. X, § 9).

7. Because the relevant events occurred in 1989, we do not consider whether Dolenz violated rule 1.08(a), the version of DR 5–104(A) in effect after January 1, 1990. Tex. Disciplinary R. Prof'l Conduct 1.08(a).

ever, whether Dolenz violated any of the other rules cited in Question No. 2, as well as in Question No. 3, is relevant to the sanctions the trial court may impose on remand. *See* Tex.R. Disciplinary P. 3.10 (in imposing sanctions, the trial court shall consider the nature and degree of the professional misconduct for which the respondent is being sanctioned). Therefore, we will consider whether there is evidence Dolenz violated rule 1.14(b).

The jury was instructed that rule 1.14(b) provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Tex. Disciplinary R. Prof'l Conduct 1.14(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp. 1999) (Tex. State Bar R. art. X, § 9). The State Bar contends there is evidence Dolenz violated this rule by retaining personal possession of the paintings he recovered rather than promptly delivering the paintings to Vail. We disagree.

■ Rule 1.14(b) became effective on January 1, 1990; the jury was not instructed on any previous version of the rule. There is no evidence that Dolenz recovered any of Vail's paintings after the rule went into effect. By mid-November 1989, Dolenz had recovered twelve paintings. Although Dolenz testified he recovered fifteen to seventeen of Vail's paintings, there is no evidence that any paintings were recovered in 1990. Thus, rule 1.14(b) was not applicable in this case.

8. By the time of trial, Dolenz had tendered

■ Even if rule 1.14(b) was applicable in this case, there is no evidence Dolenz violated it. The only evidence on this issue is Dolenz's deposition testimony, and Dolenz indicated he complied with the rule. When asked what kind of accounting he gave to Vail regarding the recovered paintings, Dolenz testified he notified Vail when a painting was recovered and notified him of its location. Although Dolenz admitted he did not immediately give Vail his paintings, Dolenz testified Vail agreed to let Dolenz retain possession of the paintings.[8] There is no evidence to the contrary. Thus, there is no evidence to support a jury finding that Dolenz violated rule 1.14(b).

The State Bar's second point of error, in which it contends the trial court erroneously excluded evidence, is conditioned upon a finding that it had the burden to prove a lack of consent or disclosure under DR 5–104(A). Because we have determined Dolenz had the burden to prove consent and disclosure, we need not consider the State Bar's second point. *See* Tex.R.App. P. 47.1. Also, in light of our disposition of the State Bar's first point of error, we need not consider Dolenz's third, fourth, and fifth cross-points.

### Dolenz's Representation of His Daughter in Suit Against Vail

In its third point of error, the State Bar contends the trial court erred in rendering judgment notwithstanding the verdict because there is evidence to support the jury's finding that Dolenz violated various disciplinary rules when he filed a lawsuit on behalf of his daughter against Vail. The jury was asked about this issue in Question No. 3:

> Do you find from a preponderance of the evidence that the conduct of Bernard Dolenz with respect to his representation of Brenda Lievrouw in her suit against Dmitri Vail was a conflict of interest in violation of Texas Code of Professional Responsibility DR 1–

Vail's paintings to one of Vail's attorneys.

102(A)(4) and Texas Disciplinary Rules of Professional Conduct Rules 1.06(b)(1), 1.09(a)(1), and 8.04(a)(3)?[9]

The jury answered, "We do."

The jury was instructed that Texas Disciplinary Rule of Professional Conduct 1.06(b)(1), which applies after January 1, 1990, provides: "A lawyer shall not represent a person if the representation of that person involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm."[10] TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(b)(1). The rules of professional conduct provide for an exception to this prohibition. Rule 1.06(c) provides that a lawyer may represent a client in the circumstances described in rule 1.06(b) if: (1) the lawyer reasonably believes the representation of each client will not be materially affected; and (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(c). The jury was not instructed on this exception.

 Dolenz contends the State Bar had the burden to prove that the general rule prohibiting representation applied in this case *and* to prove that the exception did not apply. Dolenz further contends the evidence is insufficient to support the jury's finding in Question No. 3 because the State Bar did not prove the exception did not apply. We disagree. The exception required proof that Dolenz reasonably believed his representation of each client would not be materially affected as well as proof of full disclosure and the client's consent. Thus, Dolenz would require the State Bar to present evidence as to his mental impressions and as to communications between him and his client. Again, the exception to the rule is in the nature of an avoidance or affirmative defense to professional misconduct. *See* TEX.R. CIV. P. 94. Thus, Dolenz had the burden to prove that the exception in rule 1.06(c) applied. *See id.; Blecher & Collins, P.C. v. Northwest Airlines, Inc.,* 858 F.Supp. 1442, 1455 (C.D.Cal.1994) ("[t]he attorney who claims his client consented to a conflicting representation bears a heavy burden of demonstrating that all relevant facts relating to the conflict were disclosed and explained to the client"). Although Dolenz requested an instruction on rule 1.06(c), the trial court refused the request. Dolenz does not complain on appeal about the trial court's refusal of his requested instruction. Because this defense was not submitted to the jury and is not conclusively established, Dolenz has waived it. *See* TEX.R. CIV. P. 279.

 We now consider whether there is evidence to support the jury's finding that Dolenz violated rule 1.06(b)(1) by representing his daughter in her suit against Vail. Rule 1.06(b)(1) prohibited Dolenz from representing his daughter in a "substantially related matter in which [her] interests are materially and directly adverse" to Vail's. Two matters are "substantially related," within the meaning of rule 1.06, when a genuine threat exists that a lawyer may divulge in one matter

---

9. The State Bar does not seek a reversal of the trial court's judgment notwithstanding the verdict regarding DR 1–102(A)(4) and rule 8.04(a)(3). DR 1–102(A)(4) was the version of rule 8.04(a)(3) in effect before January 1, 1990. It provided that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. TEX. STATE BAR R., art. XII, § 8, DR 1–102(A)(4) (Tex.Code of Prof'l Resp.), 34 TEX. B.J. 758 (1971, superseded 1990).

10. As one commentator has noted:

 Something seems radically out of place if a lawyer sues one of the lawyer's own present clients in behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's sense of loyalty is askew.

 WOLFRAM, at § 7.3.2.

confidential information obtained in the other because the facts and issues involved in both are so similar. *See In re Epic Holdings,* 985 S.W.2d 41, 51 (Tex.1998) (discussing rule 1.09, which provides that a lawyer who has *formerly* represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client if it is the same or a substantially related matter).

Dolenz contends there is no evidence to prove his representation of Lievrouw involved "a substantially related matter" in which her interests were materially and directly adverse to Vail's interests. It is undisputed that, acting as Lievrouw's attorney, Dolenz filed suit against Vail on Lievrouw's behalf in the justice of the peace court. Although the jury did not hear direct evidence of the nature of Lievrouw's suit against Vail, we conclude the record contains sufficient evidence from which the jury could have reasonably inferred that Lievrouw's suit against Vail involved a matter "substantially related" to Dolenz's representation of Vail and that Lievrouw's interests were materially and directly adverse to Vail's interests.

The record reflects that while Dolenz was representing Vail, Vail executed four promissory notes in favor of Dolenz as payment for Dolenz's services. Two of the notes were secured by Vail's artwork and other property. Dolenz assigned the notes to Lievrouw. The month before Lievrouw sued Vail, Dolenz wrote to Vail to inform him that he had assigned the notes to Lievrouw and stated, "I understand that she is making demands to have these notes paid." On April 12, 1990, Lievrouw went to Vail's house with a moving van to pick up the paintings. Dolenz accompanied her. Also that day, Dolenz wrote to Vail: "You should understand that the collateral used for the notes that have been assigned to Brenda Lievrouw is encumbered and that you cannot make any disposition of this collateral until you have satisfied the notes that Mrs. Lievrouw has." Also on April 12, Dolenz filed a motion to withdraw as Vail's counsel in the suit against NCNB.

On the next day, Lievrouw filed a suit against Vail in justice of the peace court. The justice of the peace court's docket sheet reflects that Lievrouw was represented by Dolenz, and Dolenz admitted he filed that suit as his daughter's attorney. Vail filed a motion to disqualify Dolenz. When the suit was filed, the federal court had not yet ruled on Dolenz's motion to withdraw as Vail's counsel in the suit against NCNB.

From this evidence, the jury could have reasonably inferred that Lievrouw's suit against Vail was substantially related to the notes Vail had executed to pay Dolenz for his services. Clearly, as Lievrouw and Vail were on opposite sides of the lawsuit, there is evidence that Lievrouw's interests were materially and directly adverse to Vail's interests. Thus, there is more than a scintilla of evidence to support the jury's finding that Dolenz violated disciplinary rule of professional conduct 1.06(b)(1).[11] Accordingly, the trial court erred in rendering judgment notwithstanding the verdict on this issue. We sustain the State Bar's third point of error.

In his sixth and seventh cross-points, Dolenz challenges the factual sufficiency of the evidence that he violated rule 1.06(b)(1). In considering these points, we have weighed all of the evidence, not just the evidence that supports the verdict. We cannot conclude the jury's finding that Dolenz violated disciplinary rule of professional conduct 1.06(b)(1) is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Accordingly, we overrule Dolenz's sixth and seventh cross-points.

---

11. Question No. 3 also included an instruction on rule 1.09(a), which involves conflicts of interest with former clients. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3). Because Dolenz was still the attorney of record for Vail in the NCNB suit when the Lievrouw suit was filed, we do not consider rule 1.09(a).

To summarize, we conclude that because there is no evidence Dolenz recovered any of Vail's paintings after disciplinary rule of professional conduct 1.14(b) became effective and because there is uncontroverted evidence Vail agreed to let Dolenz temporarily retain his property, there is no evidence to support a finding that Dolenz violated rule 1.14(b) by failing to promptly deliver Vail's paintings to him. We also conclude, however, that the evidence is legally and factually sufficient to support the jury's findings that Dolenz violated DR 5–104(A) by entering into a prohibited business transaction with Vail and violated disciplinary rule of professional conduct 1.06(b)(1) by representing his daughter in a matter adverse to Vail. We therefore reverse the trial court's judgment, reinstate the jury's verdict as to questions two and three and the State Bar's attorney's fees, and remand the cause to the trial court for a determination of the appropriate sanction or sanctions to be imposed. *See* TEX.R. DISCIPLINARY P. 3.09.