941 So.2d 209 (2006)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
John L. SANFORD.
No. 2006-JP-00870-SCT.
Supreme Court of Mississippi.
October 26, 2006.
*210 Luther T. Brantley, III, Darlene D. Ballard, attorneys for appellant.
G. David Garner, Raleigh, attorney for appellee.
EN BANC.
CARLSON, Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint charging Covington County Southern District Justice Court Judge John L. Sanford with willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, thus causing such alleged conduct to be actionable pursuant to the provisions of Miss. Const. art. 6, § 177A. In the end, the Commission and Judge Sanford submitted to us a joint motion for approval of a recommendation that Judge Sanford be publicly reprimanded and assessed with costs. We now conduct our mandated review of the Commission's recommendation consistent with Miss. Const., art. 6, § 177A, Miss. Comm'n on Jud. Perf. R. 10, M.R.A.P. 16(d), and our case law.

FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶ 2. In its formal complaint, the Commission alleged, inter alia, that on April 24, 2005, the Covington County Sheriff's Department charged and arrested a person for Driving Under the Influence, First Offense, and a court date was eventually set for the defendant to appear before Justice Court Judge John L. Sanford on August 3, 2005. The formal complaint further asserted:
A few days after the arrest, Dallas Springer, the arresting officer, was approached by the Covington County Sheriff, Roger Wood Speed, and advised that [Judge Sanford] wanted the charges against [the defendant] dismissed. Stringer was again approached by Sheriff Speed on August 2, 2005, and advised Stringer that [Judge Sanford] wanted him to be late for court the next day so that the charges against [the defendant] could be dismissed. Stringer stayed at the Sheriff's Department on August 3, 2005 until such time as the case was in fact dismissed by [Judge Sanford] and he subsequently attended court on the additional cases pending before [Judge Sanford] that day in which he was the arresting officer.
On this set of facts, the Commission charged Judge Sanford with violations of Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), 3B(8) and 3E of the Mississippi Code of Judicial Conduct (Judicial Code). The Commission further asserted that Judge Sanford's alleged judicial misconduct was *211 actionable pursuant to the provisions of Miss. Const. art. 6, § 177A. The Commission dutifully complied with the provisions of Miss. Comm'n on Jud. Perf. R. 6C concerning proper notice to Judge Sanford, as well as informing Judge Sanford of his right to respond pursuant to Miss. Comm'n on Jud. Perf. R. 6D.
¶ 3. Within days of the filing of the formal complaint, Chancellor Patricia D. Wise, Chair of the Commission, appropriately entered an order appointing a three-person committee, consisting of certain Commission members, to conduct a formal hearing concerning the allegations contained in the formal complaint. See Miss. Comm'n on Jud. Perf. R. 8C, 8D. Thereafter, Judge Sanford, through counsel, filed an answer to the formal complaint wherein he generally denied the material allegations of the formal complaint. Upon Judge Sanford's filing of his response to the Commission's formal complaint, Chancellor Wise promptly entered a scheduling order providing for various deadlines for discovery and the filing of motions as well as a hearing date of February 10, 2006, at the Commission offices in Jackson.
¶ 4. However, in lieu of the formal hearing, the Commission and Judge Sanford ultimately reached an agreement which was memorialized by a duly filed Agreed Statement of Facts and Proposed Recommendation on February 27, 2006. We deem it important here to set out this agreement, verbatim, omitting only the formal introductory language:
1. This Agreed Statement of Facts and Proposed Recommendation is to be submitted in lieu of a hearing as provided for in Rule 8 of the Rules of the Commission.
PARTIES
2. The Commission is a body created pursuant to § 177A, Mississippi Constitution of 1890, as amended.
3. The Respondent is now and was at all times hereinafter mentioned, a Justice Court Judge, Southern District, Covington County, Mississippi.
4. The Commission has jurisdiction over the Respondent under the authority granted by § 177A of the Mississippi Constitution of 1890, as amended, applicable statutes, and the Rules of the Commission.
5. On November 1, 2005, the Mississippi Commission on Judicial Performance, hereinafter referred to as the "Commission" filed a Formal Complaint charging Respondent with judicial misconduct constituting wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of § 177A of the Mississippi Constitution of 1890, as Amended.
6. Thereafter, Respondent, through counsel, filed an answer to the Formal Complaint on November 30, 2005, admitting some factual allegations, but denying that his actions constituted judicial misconduct.
AGREED FACTS
7. April 24, 2005, the Covington County Sheriff's Department arrested [the defendant] on the charges of Improper Equipment and Driving Under the Influence, 1st offense. [The defendant's] court date was set for August 3, 2005.
8. A few days after the arrest, Dallas Stringer, the arresting officer, was approached by the Covington County Sheriff, Roger Wood Speed, and advised that Respondent wanted the charges against [the defendant] dismissed. Stringer was again approached by Sheriff Speed on August 2, 2005, and advised *212 Stringer that Respondent wanted him to be late for court the next day so that the charges against [the defendant] could be dismissed. Stringer stayed at the Sheriff's Department on August 3, 2005, until such time as the case was in fact dismissed by the Respondent and he subsequently attended court on the additional cases pending before Respondent that day in which he was the arresting officer.
9. By engaging in the above stated conduct, the Respondent violated Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), 3B(8), and 3E of the Code of Judicial Conduct of Mississippi.
10. By engaging in the above stated conduct the Respondent has also violated § 177A of the Mississippi Constitution of 1890, as amended, as said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
PROPOSED RECOMMENDATION
11. Counsel for the Commission and the Respondent hereby propose that, for the conduct as agreed upon and set forth above, that the Respondent be publicly reprimanded, and that he be assessed costs in the sum of $100.00 pursuant to § 177A of the Mississippi Constitution of 1890, as amended.
¶ 5. The minutes of the Commission meeting of March 10, 2006, reveal that the Commission, by a unanimous vote, accepted and adopted the joint agreed statement of facts with the proposed recommendation that Judge Sanford be publicly reprimanded and assessed costs. Thereafter, on May 12, 2006, the Commission entered its Findings of Fact and Recommendation consistent with its action of March 10, 2006. On June 23, 2006, the Commission filed with this Court its joint motion for approval of its recommendations.

DISCUSSION
I. WHETHER JUDGE SANFORD'S CONDUCT CONSTITUTED WILLFUL MISCONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
¶ 6. "We conduct de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Commission on Judicial Performance." Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1156 (Miss.2004) (citing Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss. 1993)). "While we do give great deference to the Commission's findings, we are also charged to render an independent judgment." Id. (citing Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994)). "We are the trier of fact and have the sole power to impose sanctions in judicial misconduct cases." Id. at 1157 (citing Peyton, 645 So.2d at 956).
¶ 7. The Commission found by clear and convincing evidence that Judge Sanford's conduct violated Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), 3B(8), and 3E of the Judicial Code. Furthermore, the Commission found by clear and convincing evidence that Judge Sanford engaged in "willful misconduct" and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute" thus causing such conduct to be actionable pursuant to the provisions of Miss. Const. art. 6, § 177A. We have previously defined the phrase "willful misconduct" as follows:
"Willful misconduct in office is the improper or wrongful use of power of his *213 office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith . . . A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith . . . Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute."
Gibson, 883 So.2d at 1157 (citing In re Quick, 553 So.2d 522, 524-25 (Miss.1989)).
¶ 8. Judge Sanford has agreed to the Commission's recommendation and has joined the Commission's motion for approval of its recommendations. Judge Sanford has also agreed in writing that he worked through the sheriff to have the arresting officer dismiss the charges against the subject DUI defendant. Through the various documents filed with us, Judge Sanford likewise admits that he violated the cited judicial canons by engaging in such conduct which would be deemed to be willful misconduct in office and conduct prejudicial to the administration of justice, thereby bringing his judicial office into disrepute and causing his conduct to be actionable under the provisions of Miss. Const. art. 6, § 177A. With there being no dispute as to the relevant facts, and with Judge Sanford's admissions as to his various violations of our judicial canons, with which this Court agrees, we turn now to the appropriate sanctions to impose upon Judge Sanford.
II. WHETHER PUBLIC REPRIMAND AND ASSESSMENT OF COSTS ARE APPROPRIATE SANCTIONS.
¶ 9. We set out here the judicial canons which Judge Sanford admits he violated:
CANON 1
A Judge Shall Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
* * * * *
B. Adjudicative Responsibilities.
(1) A judge shall hear and decide all assigned matters within the judge's jurisdiction except those in which disqualification is required.

*214 (2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
* * * * *
(7) A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
(a) where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized: provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) Judges may obtain the advice of a disinterested expert on the law applicable to a proceeding before them if the judges give notice to the parties of the person consulted and the substance of the advice, and afford the parties reasonable opportunity to respond.
(c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.
(8) A judge shall dispose of all judicial matters promptly, efficiently and fairly.
E. Disqualification.
(1) Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .
In setting out these various Canons of the Mississippi Code of Judicial Conduct, we have omitted those portions deemed irrelevant to today's discussion, and we have likewise omitted the Commentary portions of the Judicial Code related to these cited canons.
¶ 10. This Court, as the state's highest court, has previously been given an unambiguous constitutional mandate concerning our solemn responsibility in determining the appropriate sanction to impose upon one our judges upon a finding of actionable judicial misconduct:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . . . (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; . . . or (e) conduct prejudicial *215 to the administration of justice which brings the judicial office into disrepute. . . .
Miss. Const. art. 6, § 177A. This is a responsibility we do not take lightly, whether we are dealing with complaints of misconduct lodged against justice court judges, municipal judges, state trial judges or appellate judges. We have the utmost respect for our justice court judges who come into contact with more of our citizens than any other class of judges. Thus, we have a right to expect exemplary conduct from our justice court judges. After all, we stated more than seventeen years ago:
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the justice court judge. See In re Garner, 466 So.2d 884, 887 (Miss.1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process.
In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989).
¶ 11. With this having been said, we unhesitatingly acknowledge that we have previously stated that the sanction should "fit the offense" and be consistent "with other like cases." In re Bailey, 541 So.2d at 1039. However, notwithstanding the Commission's recommendation in this or any other case, this Court, and this Court alone, is constitutionally charged with making the ultimate decision as to the appropriate sanction to impose upon one who has engaged in actionable judicial misconduct. Gibson, 883 So.2d at 1156-57 (citing Peyton, 645 So.2d at 956; Gunn, 614 So.2d at 389).
¶ 12. In today's case, the Commission has recommended that Judge Sanford be publicly reprimanded and assessed costs of $100.00. This recommended discipline is no doubt consistent with the sanctions we found appropriate in Miss. Comm'n on Judicial Performance v. Blakeney, 848 So.2d 824 (Miss.2003) (Blakeney I).[1] In Blakeney I, Judge Blakeney initiated and participated in ex parte communication with an officer and encouraged the officer not to appear in court on a case assigned to another judge as a means of securing the dismissal of the charges. Id. at 825. This Court found that Judge Blakeney had engaged in willful misconduct and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. Id. at 825-27. Additionally, this Court found that Judge Blakeney had violated Canons 1, 2A, 2B, 3A(1), and 3A(4)[2] *216 of the Judicial Code of Conduct. Id. We publicly reprimanded Judge Blakeney and assessed him the costs of the proceedings. Id. at 827-28. We are confronted today with the Commission's recommendation that we impose upon Judge Sanford basically the same sanctions as we imposed upon the judge in Blakeney I.[3]
¶ 13. This Court takes into account mitigating factors in determining the appropriate sanctions. These factors were set out in In re Baker and modified in Gibson. In re Baker, 535 So.2d 47, 54 (Miss.1988); Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). The Baker/Gibson factors (hereinafter referred to as the Gibson factors) are: "(1) The length and character of the judge's public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances." Gibson, 883 So.2d at 1158.
¶ 14. First, Judge Sanford was in his ninth month as a Justice Court Judge when the violations occurred. The record is silent as to the character of his service prior to that date. Second, there is precedent on point. In Blakeney I, Judge Blakeney engaged in similar conduct and received the same sanction recommended for Judge Sanford in the present case.[4]Blakeney I, 848 So.2d at 825. Third, Judge Sanford's willful misconduct is very serious. The reputations of Judge Sanford, the Sheriff, the arresting officer, and the judicial office itself were tarnished. Further, if the DUI offender, after a fair public hearing, were proven guilty, Covington County's citizens could have comfortably maintained confidence in the integrity of its justice system which had appropriately punished a drunk driver. This action in turn would have hopefully specifically deterred that particular motorist from engaging in similar conduct in the future, and generally deterred the motoring public in Covington County from committing similar offenses, thus making the County's public highways and streets safer for all motorists. Fourth, there is no evidence of a pattern of inappropriate conduct.
¶ 15. Fifth, admittedly contrary to our holding in Blakeney I, where we summarily found that "[t]here were no allegations that Judge Blakeney's violations involved moral turpitude," 848 So.2d at 827, we are convinced, upon reflection, that such action by a judge does indeed involve moral turpitude.[5] After all, we have previously *217 stated that "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Gibson, 883 So.2d at 1158. We now find that, contrary to the assertions of the Commission and Judge Sanford that there is no evidence of moral turpitude in this case, today's facts, which are not only undisputed, but agreed upon by both the Commission and Judge Sanford, clearly and convincingly prove that Judge Sanford's actions involved moral turpitude. We feel compelled to ask this question: If a judge's clandestinely approaching the chief law enforcement official of the county to have that officer in turn approach the arresting officer in a DUI case and request (or conceivably demand) on the part of the judge that the arresting officer simply fail to appear for court so that the DUI case can be dismissed for lack of prosecution, are not actions representative of conduct exhibiting at the very least fraud, deceit, extortion and interference with the administration of justice, thus bringing the judicial office and the judiciary in general into disrepute, what judicial misconduct is required before a judge has committed an act of judicial misconduct involving moral turpitude? After all, this case is not about a judge's conduct because of a judge's lack of judicial education or training. This case involves some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others. Judge Sanford's actions are clearly indicative of judicial misconduct exhibiting moral turpitude.
¶ 16. Sixth, there is mitigating evidence in the fact that Judge Sanford acknowledges the inappropriateness of his conduct and agrees with the findings of the Commission, and there is no evidence of aggravating circumstances.
¶ 17. Again, the Commission has recommended that Judge Sanford be sanctioned by way of a public reprimand and assessment of the costs of this proceeding in the amount of $100.00. Judge Sanford has agreed to this recommendation and has joined in the Commission's motion to accept the recommended sanctions. However, we now disagree that a public reprimand, alone, is the appropriate sanction for a judge who engages in such egregious conduct which undermines our system of justice.
¶ 18. We readily acknowledge that in order to guide our judges who are subject to the Mississippi Code of Judicial Conduct, we must maintain consistency in imposing sanctions. In re Bailey, 541 So.2d at 1039. We also readily acknowledge that in the real world of daily law practice, a lawyer is constantly required to advise a client as to the appropriate disposition of a legal matter based, at least in part, on a judge or court's "track record" in deciding similar cases. It is critical that our trial and appellate courts afford consistency in the decision-making process. We are confident that the joint recommendation before us today is a result of both the Commission and Judge Sanford, and his counsel, relying on the past decisions of this Court in factually similar cases, such as Blakeney I. However, we are likewise confident that neither counsel for the Commission nor Judge Sanford made any assurances to Judge Sanford that this Court's acceptance of the joint recommendation was an absolute certainty. To some extent, the procedural posture of the joint recommendation in this *218 judicial discipline case is akin to a criminal defendant entering into a plea agreement with the prosecution, whereby the defendant agrees to plead guilty to the offense in return for the prosecution's promise of a specific recommended sentence to the judge for consideration. Such a plea agreement is quite often reached based on the knowledge of the prosecutor and the defense attorney of the judge's history in sentencing defendants for similar crimes with similar facts, including defendants with criminal histories similar to the defendant before the court for sentencing. However, such a plea agreement is reached with the caveat that the judge may impose a sentence deemed to be either more lenient or more severe than the sentence customarily imposed by the judge for such a crime.
¶ 19. We are now more than three years removed from our decision in Blakeney I. Again, we now find that such action on the part of Judge Sanford in attempting to subvert justice by clandestinely arranging for the arresting officer in a DUI case to "no show" at the criminal prosecution of the case so that the judge can dismiss the case for failure to prosecute is the epitome of judicial misconduct exhibiting moral turpitude. As we previously observed, our justice court justices are on the front line "where the rubber meets the road" as far as constant contact with our citizens. Justice courts will ordinarily have a much greater volume of cases than our state trial courts or appellate courts. Our citizenry's overall perception of the entire judicial system in this state is quite often a result of contact with our justice courts, since the vast majority of our citizens will have little or no contact with our state trial or appellate courts, other than for jury service. See, e.g., In re Bailey, 541 So.2d at 1039. We can no longer condone conduct similar to that exhibited by Judge Sanford to be sanctionable by way of a public reprimand. Simply put, what Judge Sanford did in this case is serious business. We thus find that, based on the record in this case, the appropriate sanction for Judge Sanford's conduct is not only a public reprimand, but also a thirty-day suspension and assessment of costs.

CONCLUSION
¶ 20. Judge Sanford's actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. For the reasons stated, we do not accept the joint recommendation of the Commission and Judge Sanford for the issuance of a public reprimand and assessment of costs, but instead, we hereby order a public reprimand, a suspension from office for a period of thirty (30) days without pay, and assessment of court costs of $100.00 against Judge Sanford. This reprimand shall be read in open court on the first day of the next term of the Circuit Court of Covington County, with Judge Sanford present.
¶ 21. COVINGTON COUNTY JUSTICE COURT JUDGE JOHN L. SANFORD SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE COVINGTON COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL; IS SUSPENDED WITHOUT PAY FOR THIRTY (30) DAYS FROM AND AFTER THE DATE OF ISSUANCE OF THE MANDATE IN THIS CASE; AND, IS ASSESSED COSTS IN THE AMOUNT OF $100.00.
SMITH, C.J., WALLER, P.J., DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., CONCUR IN PART AND DISSENT *219 IN PART WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.
NOTES
[1] Judge Blakeney would later be before this Court on charges of violating our then-judicial canons prohibiting photographic or electronic coverage of court proceedings. Miss. Comm'n on Judicial Performance v. Blakeney, 905 So.2d 521 (Miss.2004) (Blakeney II). Of course, subsequent to Judge Blakeney committing the actions which brought him before this Court in Blakeney II, this Court adopted the Mississippi Rules for Electronic Photographic Coverage of Judicial Proceedings, effective April 17, 2003.
[2] In today's case, Judge Sanford is not charged with violation of Canon 3(A)(4), which provides that "[j]udges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control."
[3] In imposing a public reprimand, this Court, in Blakeney I, likewise relied on our prior decisions in Gunn, 614 So.2d at 391 (judge publicly reprimanded for fixing ticket and having ex parte communications with traffic violator); and, Miss. Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 81 (Miss. 1997) (judge publicly reprimanded for ex parte communications with defendant, defendant's mother, arresting officer, and prosecutor, as well as interfering with bonding process).
[4] The only difference between Judge Blakeney's conduct and Judge Sanford's conduct is that Judge Blakeney went directly to the arresting officer in a DUI case and requested the arresting officer not to appear in court so that the DUI case could be dismissed; whereas, Judge Sanford used an intermediary, Sheriff Speed, in requesting that Officer Springer be late for court so that a DUI case could be dismissed for lack of prosecution.
[5] In their joint memorandum brief, the Commission and Judge Sanford state, as to the fifth Gibson factor, that "[a]lthough there is no evidence which would suggest that moral turpitude was involved in the [judge's] actions, the [judge's] abuse of his position for personal reasons is quite serious."