WALLER, Chief Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance filed a formal complaint against Hancock County Justice Court Judge Tommy Carver. It alleged that Judge Carver had ex parte communication with Steven K. Roche about his pending criminal case; failed to disclose such ex parte communication to the prosecutor; dismissed the charges against Roche without a hearing and without any motion to dismiss by the prosecutor; and falsified court records by noting on the file that two witnesses, Officers Bryce Gex and John Grimsley of the Mississippi Department of Marine Resources Marine Patrol, were absent when Roche’s case was called for trial. A three-member committee appointed by the Commission heard the testimony, reviewed the evidence, and recommended that Judge Carver be suspended thirty days from office without pay, publicly reprimanded, and assessed costs. The Commission adopted the committee’s findings. After conducting an independent inquiry of the record and giving careful consideration to the findings of fact and recommendations of the Commission and its three-member committee, we order that Judge Carver be publicly reprimanded and assessed $2,022.75 in costs.
FACTS
¶ 2. On December 23, 2010, Officers Bryce Gex and John Grimsley of the Mississippi Department of Marine Resources Marine Patrol ticketed Stephen K. Roche for five oyster-harvesting violations. Each ticket instructed Roche to appear before or contact the justice court clerk of Hancock County on or before March 22, 2011, at 9:00 a.m. Each ticket listed a phone number, as well. Four tickets included a mailing address, and one had a physical address.
¶ 3. Roche, who has a limited education and is dyslexic, said that he asked his brother-in-law, Frank Klein, to “look at the tickets and tell [him] when and where [he] had to be in court.” Klein said that he did not look at the tickets; instead, based on his father’s suggestion, he and Roche decided to visit Hancock County *967 Justice Court Judge Tommy Carver at his home. Klein had known Judge Carver his entire life; the two of them had played sports together.
¶4. So, one Saturday morning in late March or early April 2011, Roche and Klein went to Judge Carver’s home unannounced. Their only purpose, they said, was to learn the location of the temporary courtroom. The courtroom had moved several times after Hurricane Katrina.
¶ 5. Roche, Klein, and Judge Carver all said that Roche’s case was not discussed that Saturday morning: They spoke only about administrative matters and the court’s location. According to Judge Carver, Roche tried to show him one of the tickets, and he immediately told Roche and Klein that he could not discuss the case. Roche, however, did tell Judge Carver that his arraignment date was April 12, 2011— a fact that Roche could have known only if he or Klein already had contacted the court, according to Judge Carver. Based on the April 12 arraignment date, Judge Carver told them, “Well, that’s me. I definitely can’t talk to you about it.” When Roche said that he could not attend court on April 12, Judge Carver informed him that the case automatically would be reset for trial May 10. “I [gave] him the date and wrote the clerk’s ... phone number to [the] court,” Judge Carver said. Judge Carver denied that he told Roche not to attend court on May 10.
¶ 6. Roche and Klein said that Judge Carver told them the court’s location, advised Roche that he did not have to attend court on April 12 if he wished to contest the charges, and instructed Roche to contact the court clerk for a trial date. Yet, contrary to Judge Carver’s testimony, both claimed that they did not know that the case would be his.
¶ 7. The meeting between Roche, Klein, and Judge Carver was never disclosed to Hancock County Prosecutor Olen Anderson.
¶8. Roche did not attend his April 12 arraignment. On that day, Judge Carver claimed that he had an informal discussion with Officers Gex and Grimsley about Roche’s case. Judge Carver said that he, Gex, and Grimsley stood near the clerk’s office and joked about how Roche had been trying to collect oysters to make a po-boy sandwich. Officers Gex and Grims-ley asked Judge Carver if he had Roche’s case on the docket, and Judge Carver said that he did. Officer Gex then asked if Roche was related to former Justice Court Judge Lee Klein and if Judge Carver needed some “help” with the tickets. Judge Carver declined. “... I’m not sticking my butt on the line[] because I don’t know the guy,” Judge Carver replied. Officer Gex denied that such a conversation occurred.
¶ 9. The Hancock County Justice Court was busier than normal on Roche’s May 10, 2011, trial date due to the initial appearance a local celebrity on a drug charge. Several media members were there, including local reporter Dwayne Bremer. Officers Gex’s and Grimsley’s account of that day conflicts with Roche’s and Judge Carver’s. Also, Prosecutor Anderson’s testimony differs from Judge Carver’s in several key respects.
1110. Officers Gex and Grimsley testified that they were subpoenaed and arrived at the courthouse at approximately 9:30 a.m. for the 10:00 a.m. docket call. The Marine Patrol Official Radio Log shows that Officer Gex went “10-6” (off the patrol radio) in the Hancock County Justice Court at 9:27 a.m. and that Officer Grimsley did likewise at 9:34 a.m. The log showed that Officers Gex and Grimsley went back on at 11:51 a.m. and 12:51 p.m., respectively.
*968 ¶ 11. Officer Gex stated that he sat inside the courtroom next to Bremer, his old college dorm-mate. Bremer left before the 10:00 a.m. docket but recalled seeing Officer Gex that morning. Meanwhile, Officer Grimsley moved back and forth between the courtroom and the clerk’s office throughout the morning. Officer Grimsley said that he saw Roche’s name on the copy of the of the 10:00 a.m. docket that Prosecutor Anderson kept on his desk.
¶ 12. Officer Gex testified that he did not hear Roche respond when his name was called during the 10:00 a.m. docket call. Further, neither Officer Gex nor Officer Grimsley saw Roche in the courtroom that morning.
¶ 13. After the docket call, Officer Gex went to Prosecutor Anderson’s desk and saw that Prosecutor Anderson had marked “NS” for “no show” beside Roche’s name. Later, Judge Carver asked the two officers why they were in court. When the officers told him they were in court for the Roche case, Judge Carver said that that case had to be reset for trial because Roche was related to a former justice court judge. Officer Gex testified that Judge Carver had reset trial for July 12, 2011. So Officer Gex wrote “July 12th” on the back of one of the tickets.
¶ 14. Roche, on the other hand, said that he arrived in court at 8:30 a.m. on May 10. Roche said that he “just hollered not guilty when [Judge Carver] called his name and that was it.” It is unclear from Roche’s testimony whether he responded both when his name was called at the 10:00 a.m. docket and when his case was called for trial. In a signed statement, however, Roche said he responded in both instances.
¶ 15. Judge Carver testified that Roche was present when his case was called for trial but that Officers Gex and Grimsley were not. He said that Prosecutor Anderson was not in the courtroom at that time either. Thus, once the clerk confirmed that the officers had been subpoenaed, Judge Carver dismissed the tickets. Judge Carver said that it was his regular practice to dismiss cases if the prosecutor and the subpoenaed officers were not in court; he said that he had dismissed three or four other cases that day for the same reason. Further, Judge Carver said that he had discussed this issue with Prosecutor Anderson on a prior occasion.
¶ 16. Prosecutor Anderson understood Judge Carver’s normal protocol differently. Though Prosecutor Anderson could not recall the events surrounding the Roche case on May 10 and who was or was not present, he did testify about typical proceedings in the Hancock County Justice Court. He said that it was not unusual for subpoenaed officers to wander out of courtroom to the clerk’s office, the parking lot, or the nearby sheriffs department while waiting for their cases to be called. Normally, according to Prosecutor Anderson, Judge Carver would allow him time to look for the absent officers. And if Prosecutor Anderson reported that the officers could not be located, then Judge Carver would move forward at that point. Prosecutor Anderson had no knowledge of Judge Carver ever dismissing a case without him being present and thought that it “would be an issue” if Judge Carver had done so without getting a response from him. Furthermore, Prosecutor Anderson did not recall any conversation in which Judge Carver said that he did not want him leaving the courtroom to track down officers. “[Judge Carver and I] never had a conversation where [Judge Carver] said I don’t want you to leave.... That’s never occurred,” Prosecutor Anderson said.
¶ 17. According to Judge Carver, Officers Gex and Grimsley walked into the courtroom after he had dismissed Roche’s tickets:
*969 I watched [Officers Gex and Grimsley] walk in the courtroom after the cases-[Roche’s] case and three or four other ones were dismissed. I turned in my chair and watched both officers walk in and walk straight to [Prosecutor Anderson’s] desk, look for the file, asked me what I did with it.
... I said, “Ya’ll just walked in. I just saw you. I just watched ya’ll. It was dismissed.”
The court file stated “Dismissed — officer not in court.” Judge Carver said that he offered Anderson and Officers Gex and Grimsley the opportunity to file a motion to set aside the dismissal but that no one pursued such motion. Anderson, Officer Gex, and Officer Grimsley denied that this offer was made.
¶ 18. Officers Gex and Grimsley said that they returned to court on July 12, 2011, but did not see Roche’s name listed on the docket. The clerk then informed them that all five tickets had been dismissed on May 10, 2011. The stated reason: “officer not present.” Thereafter, Officer Grimsley discussed the matter with his supervisor and filed a formal complaint with the Mississippi Commission on Judicial Performance.
STANDARD OF REVIEW
¶ 19. Mississippi Commission on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011), set forth this Court’s standard of review for judicial performance cases: “[I]n making a ‘final determination of the appropriate action to be taken in each case,’ ... [the Court will] ‘conduct an independent inquiry of the record’ and in doing so, ... [will] ‘accord careful consideration [of] the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.’ ” Boone, 60 So.3d at 176 (quoting In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982)). “Careful consideration” is less deferential than the “great weight” or “great deference” that this Court had been giving the Commission’s findings of fact and recommendations prior to Boone. But that does not mean that the Commission’s findings of fact and recommendations are given no deference at all. The findings of fact and recommendations of the Commission, and its three-member committee in particular, merit “careful consideration” for a significant reason: The three-member committee is the only body that actually hears the testimony and observes the demeanor of the witnesses. Thus, it is better-equipped to ascribe what weight should be given to those witnesses. Its findings in that regard are relevant then, especially in cases like this that hinge largely upon determinations of credibility.
¶ 20. To impose sanctions, we must find clear and convincing evidence of misconduct. Boone, 60 So.3d at 174, 184. “Clear and convincing evidence” is an intermediate standard that falls between “preponderance of the evidence” and “beyond a reasonable doubt.” Addington v. Tex., 441 U.S. 418, 423-24, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). The precise meaning of “clear and convincing evidence” is often unclear. In re Medrano, 956 F.2d 101, 102 (5th Cir.1992). The United States Court of Appeals for the Fifth Circuit has provided this useful definition:
[T]hat weight of proof which ‘produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesi *970 tancy, of the truth of the precise facts’ of the case.
Id. (finding that this definition of clear and convincing evidence is appropriate for attorney-disbarment proceedings in federal court) (quoting Cruzan by Cruzan v. Dir., Mo. Dep’t of Health, 497 U.S. 261, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990) (internal punctuation and citations omitted)).
DISCUSSION
I. Whether Judge Carver’s conduct constituted willful misconduct in violation of Canons 1, 2B, 3B(1), 3B(7), and 3B(8) of the Code of Judicial Conduct, thus causing this matter to be actionable under Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 21. The Commission, based upon clear and convincing evidence, adopted the Committee’s findings of fact, conclusions of law, and recommendations. The relevant fact-findings are stated below:
Sometime prior to the March 22, 2011, date printed on the citations, Roche went with his brother-in-law, Klein, to Respondent’s home on a Saturday. When Klein and Roche arrived at Respondent’s home, Respondent met, ex parte, with Roche and discussed the pending charges. During this discussion, Respondent reviewed his personal court calendar and discussed with Roche when the next term of court would be held. Respondent failed to disclose this ex parte conversation to Officer Grims-ley or Officer Gex or Prosecutor Anderson.
Officers Grimsley and Gex were subpoenaed to appear on May 10, 2011, at 10:00 a.m. for Roche’s trial in Hancock County Justice Court.
On the May 10, 2011, trial date, Officers Grimsley and Gex arrived at the Hancock County Justice Court prior to 10:00 a.m. ready to present testimony and evidence in support of their charges against Roche. Roche’s cases were the only cases that Grimsley and Gex had in Hancock County Justice Court that day. The Hancock County Justice Court initial appearance docket was called, and thereafter the trial docket was called. While waiting for Roche’s cases, Gex talked with his former high school classmate and college dorm mate Bremer, a reporter for The Sea Coast Echo newspaper. All of the cases on the trial docket were called and neither Grimsley nor Gex saw Roche on the day of court. Gex looked at Prosecutor Anderson’s docket sheet and next to Roche’s name appeared “NS” (no show). Respondent asked Grimsley and Gex why they were present and Respondent told Grimsley and Gex that because Roche was related to a former Hancock County Justice Court judge, the matter would be reset for trial on July 12, 2011. Gex wrote July 12 on the back of Gex’s copy of Roche’s ticket and Grimsley and Gex left Hancock County Justice Court.
Based upon Respondent’s May 12, 2011, instructions that trial would be held on July 12, 2011, Grimsley and Gex returned to Hancock County Justice Court on July 12, 2011, ready to present testimony and evidence. On July 12, 2011, Grimsley and Gex learned that Respondent had previously dismissed all five (5) of Roche’s charges. The dismissal occurred without a hearing and without the presence of or knowledge of Prosecutor Anderson.
At no time did Prosecutor Anderson or any other representative of the State move for a dismissal. As a pretense for such dismissals, Respondent falsely recorded on the court file “Dismissed-offi *971 cer not in court” on May 10, 2011, when such officers were in fact present.
In making the foregoing findings of fact, the Committee has assessed the credibility of each witness by viewing the demeanor of each witness, considering the evidence (including Exhibits) presented, and considering the testimony of each witness:
(a) Officer Grimsley was credible.
(b) Officer Gex was credible.
(c) Bremer was credible.
(d) Roche was not credible — Roche wanted the Committee to believe that Roche and Klein went to Respondent’s home solely for the purpose of determining the location of the courthouse, but prior to going to Respondent’s home, Roche had already called the Hancock County Justice Court courthouse and was informed of an April 2011 arraignment date.
(e) Klien was not credible — Klein wanted the Committee to believe that Klein and Roche went to Respondent’s home solely for the purpose of determining the location of the courthouse, but prior to going to Respondent’s home, Roche had already called the courthouse and was informed of an April 2011 arraignment date.
(f) Prosecutor Anderson was credible, but was obviously uncomfortable in testifying about misconduct by Respondent.
(g) Respondent was credible in his testimony in which he acknowledged that he dismisses tickets without providing due process to the prosecutor, but failed to recognize that such conduct is improper. Respondent was not credible in his testimony about (i) what occurred in his home with Roche and Klein; and (ii) court interaction with Prosecutor Anderson, Officer Grimsley and Officer Gex on May 10, 2011, and July 12, 2011.
¶22. In sum, the Commission determined that Judge Carver had: (1) failed to properly adjudicate criminal matters assigned to him; (2) engaged in ticket-fixing; (3) dismissed criminal charges against Roche without a hearing and without the presence or knowledge of Prosecutor Anderson, Officer Gex, or Officer Grims-ley; (4) engaged in improper ex parte contact with Roche about his pending criminal matter; (5) falsified official court records by noting on the court file that Officers Gex and Grimsley were not in court when, in fact, they were present. Accordingly, it found that Judge Carver had violated Canon 1 (charging judges to establish, maintain, and enforce high standards of conduct to uphold the integrity of the judiciary), Canon 2B (forbidding judges to allow their family, social, or other relationships to influence their judicial conduct or judgment), Canon 3B(1) (charging judges to hear and decide all matters "within the judge’s jurisdiction except those that require disqualification), Canon 3B(7) (charging judges to accord all who are legally interested in a proceeding the right to be heard according to law and forbidding judges to engage in ex parte communications about a pending matter except in certain circumstances), and Canon 3B(8) (charging judges to dispose of all judicial matters promptly, efficiently, and fairly).[1]
*972 ¶ 23. After conducting an independent inquiry of the record, with careful consideration to the findings of fact and recommendations of the Commission and its committee, we find that Judge Carver violated Canons 1, 2B3 3B(1), 3B(7), and 3B(8) of the Code of Judicial Conduct and that his actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Article 6, Section 177A, of the Mississippi Constitution of 1890, as amended.
¶ 24. Judge Carver’s, Roche’s, and Klein’s testimony was discredited in several material respects throughout the record so that the evidence, viewed as a whole, leaves little doubt as to what happened at Judge Carver’s home and in court on May 10. First,, Roche’s and Klein’s purported reason for visiting Judge Carver — simply to learn the location of the courthouse — is specious. Each ticket had a date, time, and telephone number for the court written at the bottom — one ticket even had a physical address listed. The evidence supports that either Roche or Klein, or both, had seen some or all of this information before they visited Judge Carver. Judge Carver said that when Roche and Klein arrived at his doorstep, Roche already had obtained an April 12 initial-appearance date; Roche or Klein would have had to contact the court to obtain that date, according to Judge Carver. Clearly then, Roche and Klein had knowledge of the court’s contact information — through the tickets themselves, most likely — and had some idea about how to proceed on the tickets. Further, if they truly had needed only to learn the court’s whereabouts, they easily could have contacted the clerk of the court and gotten that information instead of stopping by Judge Carver’s house unannounced on a Saturday morning.
¶ 25. Besides the evidence that Roche or Klein had read the tickets and had contacted the court, Judge Carver’s own testimony belies their assertion that they left Judge Carver’s house without knowing who would- hear Roche’s case. After Roche told Judge Carver that his initial appearance was April 12, Judge Carver told them, “Well, that’s me.” And he even told them the trial date, even though the court docket was not at his house.
¶ 26. As for Judge Carver’s and Roche’s assertions that Roche was in court on May 10, Roche’s recollection about that day makes the truth of his presence less than clear, direct, weighty, and convincing. Everyone testified that the Hancock County Justice Court was crowded and busy on May 10, except one person: Roche. When questioned about the environment inside the courthouse on May 10, Roche said that “[i]t wasn’t packed with people” and that he had not noticed anything special or unusual going on that day.
¶ 27. Then, there is Judge Carver’s claim that Officers Gex or Grimsley were not in court when Roche’s case was called for trial on May 10 and that he had not seen them earlier that morning either. Given the larger-than-normal crowd and busyness in court that particular day, perhaps Judge Carver could have missed seeing the two officers early that morning. Even so, eyewitness testimony from news reporter Bremer, the officers’ official radio log, and the officers’ testimony clearly sup *973 port their presence in the courtroom that morning.
¶28. Finally, and perhaps most convincing, is the collective testimony that conflicts with Judge Carver’s claim that he offered Prosecutor Anderson and Officers Gex and Grimsley, in open court, the opportunity to file a motion to set aside the dismissal. Prosecutor Anderson, Officer Gex, and Officer Grimsley denied that such an offer was made.
¶ 29. Considering the record as a whole, Roche’s, Klein’s, and Judge Carver’s accounts simply are not believable; they conflict with one another and with other direct and circumstantial evidence.
¶ 30. Even if Judge Carver’s account is accepted as true, sanctions still would be warranted. Judge Carver- testified that he dismissed a case on his own accord without either a hearing or a motion to dismiss from the prosecutor. That alone constituted misconduct: “Procedurally speaking, a court cannot dismiss a case on its own volition. A hearing must be conducted unless the prosecuting attorney moves to dismiss the case.” Miss. Comm’n on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss.1992). In the recent past, this Court has sanctioned judges for dismissing cases without proper motion or notification to the prosecutor. Miss. Comm’n on Judicial Performance v. Bradford, 18 So.3d 251, 253, 255, 258 (Miss.2009).
¶ 31. Judge Carver directs the Court to a 2008 Attorney General opinion that suggests that a justice court judge can dismiss a case if the prosecuting attorney fails to attend court. Strait, 2008 WL 4140511 (Miss.A.G. Aug. 22, 2008). And he submits that if dismissal under such circumstances indeed is impermissible, then he simply made a mistake of law.
¶ 32. Neither the Attorney General opinion nor a mistake in the law, of this particular nature, exonerates Judge Carver. Attorney General opinions offer guidance, but they are not binding on this Court. Shelter Mut. Ins. Co. v. Dale, 914 So.2d 698, 703 (Miss.2005) (citing In re Assessment of Ad Valorem Taxes on Leasehold Interest Held by Reed Mfg., Inc. ex rel. Itawamba County Bd. of Supervisors, 854 So.2d 1066, 1071 (Miss.2003)). Though the Attorney General opinion may suggest that a justice court judge can dismiss a case if the prosecutor is not in court when the case is called, this Court said otherwise in Chinn. Chinn, 611 So.2d at 852. And though honest, simple mistakes in reasonably attempting to decide cases based on controlling law are not sanctionable, ignorance or mistakes of law that exceed mere errors in judgment, such as improperly dismissing tickets, do not shield a judge from sanctions. Miss. Comm’n on Judicial Performance v. Martin, 921 So.2d 1258, 1268-69 (Miss.2005).
¶ 33. We now move to consider the appropriate sanctions in this case.
II. Whether Judge Carver’s misconduct warrants a thirty-day suspension without pay, a public reprimand, and assessment of costs in the amount of $2,022.75.
¶ 34. The Commission recommends that Judge Carver be suspended thirty days from office without pay, publicly reprimanded, and assessed costs in the amount of $2,022.75. We weigh the appropriateness of sanctions based on: “(1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) wheth *974 er moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances.” Boone, 60 So.3d at 185 (citing Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004) overruled on other grounds by Boone, 60 So.3d 172).

A. The length and character of Judge Carver’s service

¶ 35. Judge Carver has served as a justice court judge for twelve years. The record is silent as to the character of his public service.

B. Prior caselaw on point

¶ 36. The Commission cites four cases that involved ticket-fixing and/or ex parte communication with a defendant.
¶ 37. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209, 218 (Miss.2006), Justice Court Judge John L. Sanford arranged for the arresting officer in a DUI case to “no show” at trial so that he could dismiss the case for failure to prosecute. Id. The Commission and Judge Sanford submitted a joint motion for approval of recommendation that Judge Sanford be publicly reprimanded and assessed with costs. Id. at 210. But, because of the seriousness of Judge Sanford’s actions, this Court did not accept the joint recommendation. Id. at 218. Instead, we imposed a thirty-day suspension, public reprimand, and assessment of costs in the amount of $100. Id.
¶ 38. Mississippi Commission on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007), involved ticket-fixing and ex parte communication with defendants. Id. There, Municipal Court Judge Rex Gordon Jr. “passed” fourteen tickets to the file over the issuing officer’s objection and advised the defendants not to appear in court. Id. at 302-03. We ordered a thirty-day suspension, a public reprimand, and assessment of costs in the amount of $100. Id. at 306.
¶ 39. In Mississippi Commission on Judicial Performance v. Bradford, 18 So.3d 251, 253 (Miss.2009), Justice Court Judge Richard Bradford acted inappropriately by:
engaging in ex parte communications in a rental-dispute case and subsequently ruling in favor of the party with whom he had the ex parte communications; continuing a case in which all of the parties failed to appear for court without such motion from either of the parties in violation of Rule 2.06 of the Uniform Rules of Procedure for Justice Court; dismissing a case without prejudice in which all of the parties failed to appear for court in violation of Rule 2.06 of the Uniform Rules of Procedure for Justice Court; attempting to have two traffic citations which had been issued to Kacy D. Jones and assigned to another justice court judge dismissed by the county prosecutor; dismissing a profane-and-in-deeent-language case without motion or proper notification to the prosecutor; dismissing a failure-to-abide-by-a-protective-order case without proper motion or notification to the prosecutor; dismissing second-offense DUI charges without the prosecution being allowed to call the issuing officer as a witness; non-adjudicating a first-offense DUI charge against a minor without notice to the prosecutor after attempting, but failing, to transfer the matter to youth court; ordering contempt warrants issued against individuals in the absence of pending charges against those individuals and in the absence of notice or a hearing for such individuals; and dismissing charges of failure to abide by a protective order without allowing the prosecutor to be present or to present witnesses.
*975 Id. The Court noted the Commission’s finding that taking “dispositive action in cases without notifying the prosecutor or affording the prosecutor the opportunity to present witnesses is akin to ‘ticket[-]fixing.’ ” Id. at 255. As punishment, this Court imposed a thirty-day suspension, a public reprimand, and assessment of costs in the amount of $100. Id. at 258.
¶ 40. Finally, in Mississippi Commission on Judicial Performance v. McKenzie, 63 So.3d 1219, 1222-23 (Miss.2011), Justice Court Judge Marion McKenzie committed numerous infractions: He disposed of, or attempted to dispose of, nine ticket citations for misdemeanor offenses; intervened, or attempted to intervene, in cases assigned to another judge; and improperly disposed of three cases. Id. The Commission and Judge McKenzie field a joint motion for approval of recommendation of a public reprimand, a $500 fine, and assessment of costs in the amount of $100. Id. at 1221. Yet, because of the egregiousness of Judge McKenzie’s conduct — especially his intervention in cases assigned to other judges — we imposed a thirty-day suspension, as well. Id. at 1226.
¶ 41. Judge Carver’s misconduct, though serious, is not as egregious or extensive as the judges’ misdeeds in Sanford, Gordon, Bradford, and McKenzie. Judge Sanford’s misconduct tarnished not just the judiciary but law enforcement, as well. Sanford, 941 So.2d at 216. And the number of improprieties committed by the judges in Gordon, Bradford, and McKenzie exceed the number in this case.

C.Magnitude of the offense and the harm suffered

¶ 42. Judge Carver interfered with the administration of justice and brought the judicial office into disrepute. His actions created an impression that certain defendants could influence his judicial conduct. Further, he deprived the State of an opportunity to prosecute Roche.

D.Pattern of conduct

¶ 43. Judge Carver has no disciplinary history with the Commission. Nevertheless, we have said that “‘a pattern of misconduct exists where a single disciplinary action comprises multiple offenses.’ ” Id. at 1225 (quoting Bradford, 18 So.3d at 256). Here, Judge Carver committed four offenses: (1) he had ex parte communication with Roche; (2) he failed to disclose that ex parte communication to the prosecutor; (3) he dismissed five tickets against Roche without a hearing and without the prosecutor’s presence or knowledge; and (4) he falsified court records by writing on the file that Officers Gex and Grimsley were absent when Roche’s case was called for trial. We find that this constitutes a pattern of misconduct.

E.Moral turpitude

¶ 44. Moral turpitude includes “‘actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.’ ” McKenzie, 63 So.3d at 1225 (quoting Gordon, 955 So.2d at 305). Ticket-fixing implicates moral turpitude, as well. See McKenzie, 63 So.3d at 1225 (citing Gordon, 955 So.2d at 305).
¶45. We agree with the Commission that Judge Carver’s actions involved moral turpitude.

F.Mitigating or aggravating circumstances

¶ 46. The Commission cites no mitigating factors. Additionally, Judge Carver has not acknowledged any wrongdoing.
¶47. The Commission’s recommendation of a thirty-day suspension, a public reprimand, and assessment of costs in the *976 amount of $2,022.75 matches the punishment we imposed in Sanford, Gordon, Bradford, and McKenzie. But we do not find that Judge Carver’s misconduct is as egregious or as extensive as the misdeeds in those cases. Accordingly, based on the totality of the circumstances, we find that Judge Carver’s actions require imposition of a public reprimand and assessment of costs in the amount of $2,022.75.
CONCLUSION
¶48. After conducting an independent review of the record, and after giving careful consideration to the findings of fact and recommendations of the Commission, we find that Judge Carver violated Canons 1, 2B, 3B(1), 3B(7), and 3B(8) of the Code of Judicial Conduct and that his actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute under Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. Therefore, we order that Judge Carver be publicly reprimanded and assessed $2,022.75 for the costs of this proceeding.
¶ 49. HANCOCK COUNTY JUSTICE COURT JUDGE TOMMY CARVER SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE HANCOCK COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE CARVER IN ATTENDANCE. IN ADDITION, JUDGE CARVER IS ASSESSED COSTS OF $2,022.75.
RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ„ CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.

. The Commission further found that Judge Carver had violated Mississippi Code Section 97-11-1 by falsifying court records. Section 97-11-1 states:
*972 If any clerk of any court, or public officer or any other person, shall wittingly make any false entry, or erase any work or letter, or change any record belonging to any court or public office, whether in his lceep-ing or not, he shall, on conviction thereof, be imprisoned in the penitentiary for a term not exceeding ten years, and be liable to the action of the party aggrieved.
Miss.Code Ann. § 97-11-1 (Rev.2006).